ANABELLE SAVAGE, APPELLANT, *v.* SHAWN PIERSON, RESPONDENT.

No. 45956

May 3, 2007 157 P.3d 697

*Beckley Singleton, Chtd.*, and *Bruce T. Beesley* and *Tricia M. Darby*, Reno, and *Daniel F. Polsenberg*, Las Vegas, for Appellant.

*Action Legal Services* and *David S. Rankine*, Reno, for Respondent.

Before the Court EN BANC.[1]

# OPINION

By the Court, DOUGLAS, J.:

In response to a certified question submitted by the United States Bankruptcy Court for the District of Nevada, we consider whether a security deposit in a residential lease is exempt from the claim of creditors either under the homestead exemption of NRS 21.090(1)(*l*) or the dwelling exemption under NRS 21.090(1)(m).

We conclude that a security deposit in a residential lease is not exempt from the claim of creditors under either the homestead exemption of NRS 21.090(1)(*l*) or the dwelling exemption of NRS 21.090(1)(m).

## FACTS AND PROCEDURAL HISTORY

On August 9, 2000, respondent Shawn Pierson (Debtor) entered into a one-year residential lease agreement commencing on August 12, 2000. Upon signing the lease agreement, the Debtor was required to provide an $875 security deposit, which secured his obligations to the landlord under the lease. Upon the expiration of the one-year term, the lease automatically converted to a month-to-month tenancy.

In March 2005, the Debtor commenced a voluntary Chapter 7 bankruptcy. Subsequently, in May 2005, he filed an amendment to Schedule C—Property Claimed as Exempt, in order to include a $500 security deposit as an exemption under NRS 21.090(1)(m).[2] The Chapter 7 Trustee, appellant Anabelle Savage (Trustee), filed an objection on the grounds that the Debtor did not hold equity in a month-to-month residential lease. The Debtor filed his response to the Trustee's objection, arguing that most states that have addressed the issue hold that lease interests are exempt under homestead law, and that a security deposit is a component of the leasehold. The Debtor also filed a supplemental response that contained a copy of the lease agreement.

Both parties contended that no precedent in Nevada explains whether a security deposit in a residential lease is exempt from the claim of creditors either as a part of an exempt homestead under NRS 21.090(1)(*l*) or as a dwelling under NRS 21.090(1)(m). Con-

---

[1]This case was submitted for decision before January 1, 2007. Thus, only those justices remaining on the court who previously heard this matter participated in this decision. THE HONORABLE MICHAEL A. CHERRY, Justice, and THE HONORABLE NANCY M. SAITTA, Justice, therefore did not participate in the decision of this matter.

[2]Despite providing an $875 security deposit at the signing of the lease, the Debtor only claimed a $500 security deposit in his bankruptcy petition.

sequently, on September 13, 2005, both parties entered into a stipulation for entry of an order certifying a question of law to this court.

The United States Bankruptcy Court for the District of Nevada subsequently submitted to us the following certified question:

> Is a security deposit in a residential lease exempt from the claim of creditors either as a part of an exempt dwelling under NRS 21.090(1)(m) or as a homestead under NRS 21.090(1)(l)?

## DISCUSSION

Under NRAP 5(a), this court may answer questions of law certified to it by federal courts when the "answers may 'be determinative' of part of the federal case, there is no controlling [Nevada] precedent, and the answer will help settle important questions of law."[3] The answer to the question presented by the United States Bankruptcy Court for the District of Nevada will determine part of an ongoing bankruptcy case; it appears that there is no Nevada precedent on the question presented; and the answer will certainly settle an important question of law. Therefore, we will address the question presented to this court.

### Statutory construction

This certified question involves the construction of statutes. When examining a statute, a purely legal inquiry, this court should ascribe to its words their plain meaning, unless this meaning was clearly not intended.[4] If, however, a statute is subject to more than one reasonable interpretation, it is ambiguous, and the plain meaning rule does not apply.[5] When a statute is ambiguous, legislative intent is the controlling factor, and reason and public policy may be considered in determining what the Legislature intended.[6] Whenever possible, "we construe statutes such that no part of the statute is rendered nugatory or turned to mere surplusage."[7] This court has historically and liberally construed the homestead exemption in favor of the debtor.[8]

---

[3]*Volvo Cars of North America v. Ricci*, 122 Nev. 746, 751, 137 P.3d 1161, 1164 (2006) (quoting *Ventura Group v. Ventura Port Dist.*, 16 P.3d 717, 719 (Cal. 2001)).

[4]*Harris Assocs. v. Clark County Sch. Dist.*, 119 Nev. 638, 641-42, 81 P.3d 532, 534 (2003).

[5]*Id.* at 642, 81 P.3d at 534.

[6]*Id.*

[7]*Albios v. Horizon Communities, Inc.*, 122 Nev. 409, 418, 132 P.3d 1022, 1028 (2006).

[8]*Jackman v. Nance*, 109 Nev. 716, 718, 857 P.2d 7, 8 (1993).

*A. A security deposit in a residential lease is not exempt under NRS 21.090(1)(l) or Nevada's homestead law*

Homestead law was unknown to the common law, and it was created by constitutional provisions and by statute. Accordingly, the homestead exemption can only be extended or limited by the statutes or constitutional provision that created it.[9]

Nevada's Constitution provides for a homestead exemption:

> A homestead as provided by law, shall be exempt from forced sale under any process of law, and shall not be alienated without the joint consent of husband and wife when that relation exists; but no property shall be exempt from sale for taxes or for the payment of obligations contracted for the purchase of said premises, or for the erection of improvements thereon; Provided, the provisions of this Section shall not apply to any process of law obtained by virtue of a lien given by the consent of both husband and wife, and laws shall be enacted providing for the recording of such homestead within the County in which the same shall be situated[.][10]

That constitutional provision is silent as to whether the homestead was intended to protect the property interests of residential lessees.

The Legislature enacted what is now NRS 21.090 to fulfill the mandate set forth in Nevada's Constitution. NRS 21.090(1)(*l*) exempts homestead property from execution ''as provided for by law.'' The purpose of Nevada's exemption statutes is ''to secure to the debtor the necessary means of gaining a livelihood, while doing as little injury as possible to the creditor.''[11] Further, the exemptions set forth in NRS 21.090 are ''absolute and unqualified,'' with few exceptions, ''and [their] effect is to remove the property beyond the reach of legal process.''[12] NRS 115.005(2) defines a homestead as:

> (a) A quantity of land, together with the dwelling house thereon and its appurtenances;
>
> (b) A mobile home whether or not the underlying land is owned by the claimant; or
>
> (c) A unit, whether real or personal property, existing pursuant to chapter 116 or 117 of NRS, with any appurtenant limited common elements and its interest in the common elements of the common-interest community.

---

[9]*Id.*

[10]Nev. Const. art. 4, § 30.

[11]*Kreig v. Fellows*, 21 Nev. 307, 310, 30 P. 994, 995 (1892).

[12]*Elder v. Williams*, 16 Nev. 416, 423 (1882).

Thus, under NRS 115.005(2), a homestead may be claimed in the dwelling house and quantity of land, in a mobile home, in a cooperative unit under NRS Chapter 116, or in a condominium under NRS Chapter 117.

According to NRS 115.010(2), the homestead exemption provided for in NRS 115.010(1) "extends only to that amount of *equity* in property held by the claimant which does not exceed $350,000 in value." (Emphasis added.) Thus, under the express language of NRS 115.010(2), the homestead only protects the amount of *equity* the debtor holds in the property listed in NRS 115.005(2).

"Equity" is defined in NRS 115.005(1) as "the amount that is determined by subtracting from the fair market value of the property the value of any liens excepted from the homestead exemption pursuant to subsection 3 of NRS 115.010 or NRS 115.090." By definition then, "equity" is the fair market value of the property less any of the allowed encumbrances listed under NRS 115.010 or NRS 115.090. Therefore, a security deposit in a residential lease must qualify as "equity" in order to be exempt under Nevada's homestead law. We conclude that it does not.

Some federal courts have addressed whether a lessee has equity in the lease or the property in the context of federal bankruptcy law. Those courts have held that a "[l]essee obtains no equity, or ownership interest, in property under a lease"[13] and "a lessee of residential real property does not have an equity either in such realty or in the lease thereof, at least within the meaning of 'equity' as that term is used in § 362(d)(2)(A) [of the Bankruptcy Code]."[14]

Other courts have addressed the applicability of homestead exemptions to a lessee of real property. For example, Idaho's homestead statute is similar to Nevada's in that it permits an "owner" to claim a homestead in a dwelling house or a mobile home, and the mobile home need not be situated on or affixed to lands owned by the "owner" to be exempt.[15] The term owner "includes, but is not limited to, a purchaser under a deed of trust, mortgage, or contract, or a person who takes the subject property under a life estate."[16] The owner's homestead exemption is limited to "the lesser

---

[13]*In re Paz*, 179 B.R. 743, 744 (Bankr. S.D. Ga. 1995); *see also In re Flexipak, Inc.*, 49 B.R. 641, 642 (S.D.N.Y. 1985) ("[A] tenant is usually not regarded as having equity in the leased premises.").

[14]*In re Collins*, 199 B.R. 561, 565 (Bankr. W.D. Pa. 1996). 11 U.S.C. § 362(d)(2)(A) provides that the bankruptcy court may lift an automatic stay to protect a creditor's interest in property if "the debtor does not have an equity in such property."

[15]Idaho Code Ann. § 55-1001(2) (2003).

[16]*Id.* § 55-1001(4).

of (i) the total *net value* of the lands, mobile home, and improvements as described in section 55-1001, Idaho Code; or (ii) the sum of one hundred thousand dollars ($100,000)."[17] Idaho defines "net value" as "market value less all liens and encumbrances."[18] The United States Bankruptcy Court for the District of Idaho recently reviewed Idaho homestead law in *In re LaVelle*, and opined that the mere right to possession is not a sufficient interest to qualify for a homestead exemption under Idaho law:[19]

> "Debtors assert a homestead exemption not in a mobile home they own located on land leased from another, but in a house (which they do not own) occupied under a year-to-year lease that can be terminated at any time. In effect, their leasehold interest under these facts, and so, too, their exemption claim, appears limited to a right of possession. The homestead statutes, however, contemplate an ownership interest in property with a corresponding monetary value that a debtor can claim as exempt. Debtors' mere right of possession under the lease, with no corresponding 'ownership' interest, has no cognizable monetary value that they can claim as exempt. Thus, Debtors can not claim a homestead exemption when their only interest in the Property is a right to possession under a lease terminable at any time."[20]

The facts in *LaVelle* are distinguishable in that the debtors in that case were subtenants at will who were entitled to exclusive possession through an oral lease.[21] However, similar to *LaVelle*, we conclude that a debtor with the mere right to exclusive possession of the property does not have a cognizable "net value" or "equity" to claim as exempt under Nevada homestead law.[22]

We are aware that a majority of jurisdictions have concluded that under their homestead exemptions, a residential lessee's interest is a sufficient "ownership" interest for homestead protection.[23] Conceivably, where the lease interest is protected under the homestead exemption, the security deposit could also be protected as an in-

---

[17]*Id.* § 55-1003 (Supp. 2006) (emphasis added).

[18]*Id.* § 55-1001(3).

[19]350 B.R. 505, 511 (Bankr. D. Idaho 2005).

[20]*Id.* (quoting *In re Hale*, 04.3 I.B.C.R. 128, 130-31 (Bankr. D. Idaho 2004)).

[21]*Id.* at 509.

[22]*See also In re Tenorio*, 107 B.R. 787, 788-89 (Bankr. S.D. Fla. 1989) (holding that Florida's constitutional and statutory homestead provisions require "ownership," and a year-to-year lease does not constitute a sufficient ownership interest to qualify for the homestead protection under Florida law).

[23]*See, e.g., In re Casserino*, 379 F.3d 1069, 1074-75 (9th Cir. 2004) (applying Oregon law); *In re Coffey*, 339 B.R. 689 (Bankr. N.D. Ind. 2006).

separable part of the leasehold.[24] However, we decline to follow the majority of jurisdictions because the homestead statutes in many of those jurisdictions either specifically exempt lease interests[25] or they afford a much broader description of the type of property interests the exemption protects.[26]

 ██ ██

We conclude that a debtor must have some form of "equity" in his residence in order to claim a homestead exemption in the residence. The statutory definition of "equity" contemplates more than a general "interest" in the property or the right to possession, it contemplates ownership. This is the express language of the statute.[27] Had the Legislature intended to exempt security deposits in residential leases, it could have easily done so, as several other jurisdictions have. While we must construe any ambiguities in homestead law in favor of the debtor, we cannot extend the protection afforded in NRS 115.005(1) and NRS 115.010(2) to include security deposits in residential leases, in contravention of the homestead statute's express language.[28]

Given the plain language of NRS 21.090(1)(*l*), NRS 115.005(1), and NRS 115.010(2), we conclude that a security deposit in a residential lease is not exempt under NRS 21.090(1)(*l*).

*B. A security deposit in a residential lease is not exempt from execution under NRS 21.090(1)(m)—Nevada's dwelling exemption*

 ██

NRS 21.090(1)(m) exempts from execution "[t]he dwelling of the judgment debtor occupied as a home for himself and family,

---

[24]*See Casserino*, 379 F.3d at 1074-75.

[25]*See, e.g.*, 735 Ill. Comp. Stat. Ann. 5/12-901 (West Supp. 2006); Ind. Code Ann. § 34-55-10-2(c)(1) (Lexis Nexis Supp. 2006); Mass. Ann. Laws ch. 188, § 1 (Lexis Nexis Supp. 2006); R.I. Gen. Laws § 9-26-4.1(a) (Supp. 2006).

[26]*See, e.g.*, *In re Kimble*, 344 B.R. 546, 552-54 (Bankr. S.D. Ohio 2006) (stating that Ohio homestead law only requires that a debtor have an "interest" in real or personal property in which he resides, and a remainder interest is a sufficient interest for Ohio's homestead exemption).

[27]Even more problematic, the legislative history is silent as to residential lease interests. The Legislature appeared to be concerned with homeowners' "equity" interests in their property, not with lessees' security deposits. The legislative history does not indicate that interests in residential leases were intended to be protected under Nevada homestead law.

[28]Our holding today does not affect commercial leases, nor does it rule out the possibility that a residential lessee may obtain "equity" in the leased premises through leases other than a typical year-to-year lease, such as any equity that may accumulate in a lease with the option to buy, or certain types of long-term residential leases where the lessee's interest in the property extends beyond the mere right to possession, and includes such rights as the ability to assign or sublet the premises for value. *See* NRS 115.005(1).

where the amount of *equity* held by the judgment debtor in the home does not exceed $350,000 in value and the dwelling is situated upon lands not owned by him.'' (Emphasis added.) Neither NRS Chapter 21 nor NRS Chapter 115 defines the term ''dwelling.'' The question presented does not require a clarification of the definition of ''dwelling''; therefore, we will not belabor that definition here.[29]

NRS 21.090(1)(m), like NRS 21.090(1)(*l*) and NRS 115.010(2), only purports to protect the debtor's equity in his home. However, unlike NRS Chapter 115, the dwelling exemption does not define the term ''equity.'' ''Equity'' is susceptible to more than one reasonable interpretation. Its use in NRS 21.090(1)(m) could be consistent with its definition in NRS 115.005(1), so that equity necessarily results from more than a mere possessory interest in the property. Or, ''equity'' could be viewed more broadly, as it is defined in one dictionary as ''a right, claim, or interest existing or valid in equity'' or ''the money value of an interest in a property in excess of claims or liens against it.''[30] This definition could include possessory interests, such as those of residential lessees. As the statute is ambiguous, we turn to the legislative history and rules of statutory construction for guidance.[31]

Three statutory construction rules play a role in our analysis: (1) when the same word is used in different statutes that are similar with respect to purpose and content, the word will be used in the same sense, unless the statutes' context indicates otherwise;[32] (2) words that have a technical or special meaning are presumed to carry their technical or special meaning, unless the statute shows that the Legislature intended a different meaning; and (3) when possible, we will avoid rendering any part of a statute inconsequential.[33]

The first two of these statutory construction rules result in applying the definition of ''equity'' in NRS 115.005(1) to NRS 21.090(1)(m). First, these statutes, similar with respect to purpose and content, do not indicate that ''equity'' should be interpreted

---

[29]We do note, however, that NRS 118.060(1) and NRS 118A.080 define the term ''dwelling.''

[30]*Webster's Ninth New Collegiate Dictionary* 421 (1983).

[31]*State, Dep't of Taxation v. DaimlerChrysler*, 121 Nev. 541, 548, 119 P.3d 135, 139 (2005).

[32]2B Norman J. Singer, *Statutes and Statutory Construction* § 51.02, at 197-99 (6th ed. 2000); *cf. National M. Co. v. Dist. Ct.*, 34 Nev. 67, 78, 116 P. 996, 1000-01 (1911) (noting that if a word is used in different parts of a statute, it will be given the same meaning unless it appears from the whole statute that the Legislature intended to use the word differently).

[33]*Albios v. Horizon Communities, Inc.*, 122 Nev. 409, 418, 132 P.3d 1022, 1028 (2006).

differently in NRS 21.090(1)(m) than it is defined in NRS 115.005(1). Second, "equity" carries with it a specialized meaning: akin to the definition in NRS 115.005, *Black's Law Dictionary* defines "equity," in the real estate context, as "[t]he remaining interest belonging to one who has pledged or mortgaged his property, or the surplus of value which may remain after the property has been disposed of for the satisfaction of liens."[34] NRS 21.090(1)(m) does not suggest that "equity" should not be given its technical meaning.

Even so, applying the same meaning of equity to NRS 21.090(1)(m) would mean that a debtor could acquire "equity" in a dwelling in which he has an ownership interest, if the dwelling is situated on lands not owned by him. But, NRS 115.005(2) already includes at least some of these types of dwellings—mobile homes, condominiums and cooperative units—in the definition of "homestead."[35] Thus, interpreting "equity" consistently results in a redundancy, as the two statutes would significantly overlap. NRS 21.090(1)(m), to the extent that it covers mobile homes, condominiums and cooperative units, would be rendered inconsequential. But, interpreting "equity" in NRS 21.090(1)(m) to include property interests that the homestead statute, NRS 115.005, fails to protect, such as residential lease interests, would require us to presume that the Legislature intended "equity" in two different senses, when no such intent appears from the legislation as a whole.

A review of the legislative history reveals that legislators questioned whether the provisions in NRS 21.090(1)(m) were already covered by the homestead statute. One legislator remarked that he was uncertain whether the homestead statute covered trailers. Ultimately, this legislator concluded that the two laws were "compatible."[36]

Based upon the legislative history, as well as our observation that the Legislature has consistently raised the amount of "equity" exempted under the dwelling exemption to match the homestead exemption, we conclude that the dwelling exemption was crafted to protect some of the same ownership interests as the homestead exemption and also to ensure that a debtor would not lose the equity in his dwelling, regardless of whether the dwelling was situated on land owned by him.

---

[34]*Black's Law Dictionary* 540 (6th ed. 1990).

[35]Although we need not explore the definition of "dwelling" in this opinion, we note that the term could have a broader reach than mobile homes, condominiums and cooperative units.

[36]Hearing on A.B. 349 Before the Assembly Judiciary Comm., 55th Leg. (Nev., March 3, 1969).

Therefore, even though applying NRS 115.005(1)'s definition of "equity" to the Legislature's use of that term in the dwelling exemption results in some redundancy, because the Legislature was aware of this overlap and because the overlap does not render NRS 21.090(1)(m) entirely inconsequential, we conclude that the Legislature intended "equity" to have the same meaning with respect to both statutory provisions. Since the dwelling exemption only protects the amount of "equity" in the dwelling, up to $350,000, the individual claiming the exemption must have more than a mere possessory interest in the dwelling to qualify for the exemption. Consequently, the dwelling exemption does not exempt a residential lessee's interests in a dwelling, nor does this exemption protect residential security deposits.

## *CONCLUSION*

We answer the certified question in the negative, and we conclude that a security deposit in a residential lease is not exempt from the claim of creditors either as a homestead under NRS 21.090(1)(*l*) or as a part of an exempt dwelling under NRS 21.090(1)(m).

MAUPIN, C. J., GIBBONS, HARDESTY and PARRAGUIRRE, JJ., concur.