**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: SCOTT K. GREENE,
          *Debtor(s).*

SCOTT K. GREENE,
          *Appellant,*

v.

ANABELLE SAVAGE,
          *Appellee.*

No. 07-16067

No.
BK-N-05-54727-
GWZ
Chapter 7

D.C. No.
06-CV-00567 HDM
and 3:06-CV-00679-
HDM-RAM
Consolidated

OPINION

Appeal from the United States District Court
for the District of Nevada
Howard D. McKibben, District Judge, Presiding

Argued and Submitted
December 12, 2008—San Francisco, California

Filed October 2, 2009

Before: Marsha S. Berzon and A. Wallace Tashima, Circuit
Judges, and Robert J. Timlin* District Judge.

Opinion by Judge Timlin

*The Honorable Robert J. Timlin, United States District Judge for the
Central District of California, sitting by designation.

**COUNSEL**

David Rankine and Michael Lehners, Reno, Nevada, for the appellant.

Robert C. Vohl, Reno, Nevada, for the appellee.

Professors James J. White and John A.E. Pottow, Ann Arbor, Michigan, as *amici curiae*.

**OPINION**

TIMLIN, District Judge:

This case is an appeal of the district court's order affirming the bankruptcy court's decision limiting Debtor-Appellant Scott Greene's homestead exemption in his bankruptcy petition to $125,000 pursuant to 11 U.S.C. § 522(p), based on the fact that Greene established residency on his property and filed his homestead claim within 1215 days of filing his bankruptcy petition. We have jurisdiction pursuant to 28 U.S.C. §§ 158(d)(1) and 1291.

**I.**

**BACKGROUND**

The material facts of this case are not in dispute. Greene purchased a parcel of undeveloped land at 450 Alamosa Drive

in Sparks, Nevada, (the "Property") in May 1994. By August 11, 2004, Greene had moved a trailer onto the Property and was living in it. On that day, Greene recorded a declaration of homestead with the Washoe County Recorder's Office for a trailer and the Property. Sixteen days later, on August 27, 2004, Greene filed a Chapter 13 bankruptcy petition. Greene concedes that until early August 2004, he never lived on or made any improvements to the Property. On October 8, 2004, Rena Wells ("Wells"), a creditor, filed an objection to Greene's claim of a homestead exemption, asserting that Greene's homestead was not his bona fide residence. Greene voluntarily dismissed the petition on February 17, 2005.

On August 11, 2005, Greene was cited by Washoe County for illegally using a recreational vehicle for dwelling purposes. At that time, Greene told authorities he was no longer using the trailer as a dwelling but was sleeping on the Property in his tent.

On October 15, 2005, Greene filed a Chapter 7 bankruptcy petition (the petition at issue in this appeal), in which he claimed the market value of the Property — $240,000, the same amount as the market value he claimed for the Property in his initial Chapter 13 petition in 2004 — as exempt pursuant to the Nevada homestead statute. Wells again filed an objection to the claim of exemption, challenging the validity of the homestead exemption and also contending that, even if the homestead was valid, it should be reduced to $125,000 pursuant to 11 U.S.C. § 522(p)(1), because the homestead was acquired within 1215 days of the filing of the petition.

The Bankruptcy Court for the District of Nevada concluded that Greene's homestead was a property interest acquired within 1215 days of his bankruptcy petition filing, because he filed his declaration of a homestead during that time period. Therefore, it held, Greene's homestead exemption was limited to $125,000 under Section 522(p). *See In re Greene*, 346 B.R. 835 (Bankr. D. Nev. 2006). Greene appealed.

Subsequently, the trustee filed a motion for an order authorizing sale of the Property free and clear of liens and encumbrances. Greene filed an opposition to this motion, arguing, *inter alia*, that he was entitled to the post-acquisition appreciation in the market value of the Property. The bankruptcy court rejected Greene's contention, finding that there was no increase in the value of the Property from the time Greene acquired it until the time he filed his petition, and that any increase in value after that was available to the trustee as post-petition appreciation.

Greene appealed both orders of the bankruptcy court to the district court. The district court affirmed the bankruptcy court in all respects. Greene filed a timely notice of appeal to this Court.

## II.

## DISCUSSION

### A. Standard of Review

This court reviews de novo a district court's decision on appeal from a bankruptcy court. *See Suncrest Healthcare Ctr. LLC v. Omega Healthcare Investors, Inc.* (*In re Raintree Healthcare Corp.*), 431 F.3d 685, 687 (9th Cir. 2005). Thus, this court applies the same standard of review applied by the district court. *See id.* The bankruptcy court's conclusions of law and interpretation of the Bankruptcy Code are reviewed de novo and its factual findings for clear error. *See Salazar v. McDonald* (*In re Salazar*), 430 F.3d 992, 994 (9th Cir. 2005). This court must accept the bankruptcy court's findings of fact unless, upon review, the court is left with the definite and firm conviction that a mistake has been committed by the bankruptcy judge. *See Latman v. Burdette*, 366 F.3d 774, 781 (9th Cir. 2004).

**B.    Interpretation of 11 U.S.C. § 522(p)(1)**

**[1]** Under 11 U.S.C. § 522, a debtor in bankruptcy can exempt certain property from the bankruptcy proceedings and protect that property from creditors. *See* 11 U.S.C. § 522(b). Section 522 contains a list of various interests in property that a debtor can exempt. *See* § 522(d). However, the Bankruptcy Code provides an opt-out provision whereby the state can either require the debtor to exempt property under the state law exemptions or grant the debtor the option of choosing between state exemptions and the § 522(d) exemptions. *See* § 522(b)(2).[1]

**[2]** In 2005, Congress amended the Bankruptcy Code by enacting Section 522(p)(1), which limits a debtor's ability to take advantage of the state homestead exemptions. Section 522(p)(1) provides as follows:

> Except as provided in paragraph (2) of this subsection and sections 544 and 548, as a result of electing under subsection (b)(3)(A) to exempt property under State or local law, a debtor may not exempt any amount of interest that was acquired by the debtor during the 1215-day period preceding the date of the filing of the petition that exceeds in the aggregate $136,875[2] in value in —
>
> (A) real or personal property that the debtor or a dependent of the debtor uses as a residence;
>
> (B) a cooperative that owns property that the

---

[1]Nevada is an opt-out state. *E.g.*, *In re Kane*, 336 B.R. 477, 480 (Bankr. D. Nev. 2006).

[2]The dollar amount was adjusted by the Judicial Conference of the United States from $125,000 to $136,875 in 2007 to reflect the change in the Consumer Price Index published by the Department of Labor, pursuant to 11 U.S.C. § 104.

debtor or a dependent of the debtor uses as a residence;

(C) a burial plot for the debtor or a dependent of the debtor; or

(D) real or personal property that the debtor or dependent of the debtor claims as a homestead.

**[3]** Section 522(p) was part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), enacted on April 20, 2005.[3] Although the bulk of BAPCPA became effective on October 17, 2005, Section 522(p) became effective on the date of enactment. *See, e.g.*, *In re McNabb*, 326 B.R. 785, 788 n.7 (Bankr. D. Ariz. 2005). As Greene's petition was filed on October 15, 2005, Section 522(p) applies to this case.

Section 522(p) was intended to "address the well-documented and often-expressed concern by members of Congress about the so-called 'mansion loophole' by which wealthy individuals could shield millions of dollars from creditors by filing bankruptcy after converting nonexempt assets into expensive and exempt homesteads in one of the handful of states that have unlimited homestead exemptions . . . ." *In re Kane*, 336 B.R. at 481-82. In a report issued in 1997, the National Bankruptcy Review Commission identified the problem and found: " 'In deferring to state law exemptions, the current system . . . multiplies the opportunities for forum shopping and prebankruptcy asset conversion. . . .' " *Id*. at 482 (quoting Nat'l. Bankr. Rev. Comm'n, Bankruptcy: The Next Twenty Years, National Bankruptcy Review Commission Final Report, Oct. 20, 1997, at 124).

---

[3]Pub. L. No. 109-8, 119 Stat. 23 (2005) (codified as amended in scattered sections of 11 U.S.C.).

Applying Section 522(p)(1), the bankruptcy court held — and the district court agreed — that the $125,000 cap does apply in this case, and that Greene's homestead exemption is limited to the cap amount. In so holding, the bankruptcy and district courts reasoned that the "interest" stated in Section 522(p)(1) includes the homestead, which was "acquired" by Greene when he moved onto the Property to establish his residence and filed a homestead declaration with the Washoe County Recorder's Office. Greene contends, to the contrary, that establishing a residence on real property and recording a homestead declaration does not establish a property "interest," but rather is a property classification. The phrase "amount of interest," as used in Section 522(p)(1), Greene contends, should be construed as a quantifiable measure and therefore as applicable only to an ownership interest in a property.

The amici brief of certain bankruptcy law professors takes a slightly different analytical tack: it emphasizes the use of the term "acquire" in the statute, and argues that the claiming of a homestead designation on an interest in property is different from the acquisition of the underlying property interest in the property. Amici contend that it is only the latter legal event with which Section 522(p) concerns itself.

We find these analyses helpful, and using them as well as other interpretive aids, conclude that perfection of a homestead exemption does not constitute acquisition of a property interest for purposes of Section 522(p)(1).

A recent Fifth Circuit case, *Wallace v. Rogers*, 513 F.3d 212 (5th Cir. 2008), is a particularly useful starting place in determining the applicability of Section 522(p)(1) to a claimed homestead exemption. There, the debtor inherited property outside the 1215-day window prior to filing a bankruptcy petition, and subsequently moved onto it within the 1215-day period of time, but still before filing her bankruptcy petition. In her petition, the debtor elected to take the Texas homestead exemption which had no monetary limit. A judg-

ment creditor objected, asserting that Section 522(p)(1) applied because the debtor's current residence had not been her homestead for the 1215-day period preceding her bankruptcy petition. The Fifth Circuit disagreed and allowed the debtor to claim the full homestead exemption.

In construing the term "interest" as used in Section 522 (p)(1), the Fifth Circuit followed the analytical steps required when federal tax lien law affects state property rights. *See id.* (citing *United States v. Craft*, 535 U.S. 274 (2002)). Under that doctrine, a court "look[s] initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayers state-delineated rights qualify as property or rights to property within the compass of the federal tax lien legislation." *Craft*, 535 U.S. at 278 (internal quotations omitted). The *Craft* court reasoned:

> A common idiom describes property as a "bundle of sticks" — a collection of individual rights which, in certain combinations, constitute property. State law determines only which sticks are in a person's bundle. Whether those sticks qualify as "property" for purposes of the federal tax lien statue is a question of federal law.
>
> In looking to state law, we must be careful to consider the *substance of the rights* state law provides, not merely the labels the State gives these rights or the conclusions it draws from them. Such state law labels are irrelevant to the federal question of which bundles of rights constitute property that may be attached by a federal tax lien.

*Id.* at 278-79 (internal citations omitted, emphasis added).

[4] We agree with the Fifth Circuit that the *Craft* approach is the proper beginning point in addressing the problem before

us. Using that framework, we first look to Nevada law to determine what Greene acquired when he recorded his homestead declaration, and then to Section 522(p)(1) to determine whether that declaration qualifies as an "any amount of interest that was acquired" within the compass of Section 522(p).

**[5]** The Nevada homestead exemption derives from the Nevada state constitution, which provides in relevant part that a " 'homestead as provided by law, shall be the exempt from forced sale under *any* process of law.' " *Contrevo v. Mercury Fin. Co.* (*In re Contrevo*), 153 P.3d 652, 654 (Nev. 2007) (emphasis in original). Reading this provision broadly, the *In re Contrevo* Court held that Nevada "has a constitutional imperative that homestead property be exempt from legal process and placed outside the reach of creditors," and noted that Nevada's exemptions have historically been absolute and unqualified with a few exceptions. *Id.* As *In re Contrevo* indicates, the substantive right gained via a homestead declaration in Nevada, although broad, is a "legal protection of" the property interest, not "an interest" in the equity or title of the property.[4]

A second recent Nevada Supreme Court decision reinforces this conclusion. *Savage v. Pierson*, 157 P.3d 697, 700, 701 (Nev. 2007), explained that the homestead exemption "only

---

[4]Other states' homestead exemptions have been similarly characterized. For example, a bankruptcy court applying Florida law explained:

> Homestead is simply a status, constitutionally defined, which exempts certain property from execution . . . . It is not a property interest. When a Florida resident's property acquires homestead status, the owner does not acquire any of the rights traditionally associated with property interests: the right to possession, the right to use, the right to transfer — the owner already holds whatever of those he has. Accordingly, homestead status in Florida is not properly conceptualized as a stick in the bundle; rather, it is a protective safe in which the bundle is put.

*Venn v. Reinhard* (*In re Reinhard*), 377 B.R. 315, 319-20 (Bankr. N.D. Fla. 2007).

protects the amount of equity the debtor holds in the property listed in Nev. Rev. Stat. § 115.005(2)," so "a debtor must have some form of 'equity' in his residence in order to claim a homestead exemption in the residence." *Savage* went on to conclude that a security deposit in a residential lease does not qualify as equity in the property under the state's homestead exemption, because the "statutory definition of 'equity' contemplates more than a general 'interest' in the property or the right to possession, it contemplates ownership." *Id*. If the debtor has such ownership, then she can choose to protect up to $350,000 of equity in her property from legal process by invoking the state's homestead exemption, as long as she meets the procedural requirements to establish a homestead as defined by Nev. Rev. Stat. § 115.020.[5] When the requirements are met, a debtor has the substantive right to classify his property as exempt under the state homestead laws. *See generally*, *I.H. Kent Co. v. Miller*, 366 P.2d 520, 522 (Nev. 1961) ("The exercise and preservation of the homestead exemption is held to be a purely personal right which can be exercised or waived by the debtor.").

[6] In Nevada, then, the role of the homestead exemption is the same as that of the Texas exemption analyzed in *Wallace*: "The homestead exemption and the property interest impressed with that exemption are discrete concepts: the former is the debtor's legal right to exempt certain property interests from the bankruptcy estate, the latter is the debtor's vested economic interest in the property itself." *Wallace*, 513 F.3d at 225.

We now turn to the question whether Greene's rights to a homestead exemption under Nevada law are affected by the provisions of Section 522(p). In answering this question, we

---

[5]Nev. Rev. Stat. § 115.020 generally requires that a party seeking to record a homestead must file a written declaration explaining that he or she is a householder; is residing on the premises; and that he or she intends to use the property as a homestead.

differ slightly with the Fifth Circuit in *Wallace*, although our ultimate conclusion — that Section 522(p) does not limit the homestead exemption that can be claimed under state law if the debtor owned the property before the 1215 day period — is the same.[6]

**[7]** Unlike the Fifth Circuit in *Wallace*, 513 F.3d at 226, we do regard the language of Section 522(p)(1) as ambiguous. As one bankruptcy court has explained:

> What Congress meant in § 522(p) is not entirely clear in this situation. At least one court has held that the phrase [in Section 522 (p)(1)] encompasses the acquisition of a "homestead interest," *In re Greene*, 346 B.R. 835 (Bankr. D. Nev. 2006), while other courts disagree, . . . *In re Lyons*, 355 B.R. 387 (Bankr. D. Mass. 2006). There is enough ambiguity to require the statute to be construed.

*In re Reinhard*, 377 B.R. at 319-20.

**[8]** The salient terms ("amount," "interest," and "acquire") are not defined in the Bankruptcy Code, and although they have common, every-day definitions, those definitions are broad enough to have already generated contradictory lower court decisions on the matter. We therefore cannot rely on the statutory language alone, but must also turn to extra-textual sources, *e.g.*, legal dictionaries and legislative history, to shed light on the meaning of Section 522(p). *See Merkel v.*

---

[6]*Wallace* held that the term "interest" as used in Section 522(p)(1) refers to vested economic interests, such as title and equity, that a debtor acquires in homestead property during the 1215 day period preceding the date a debtor files a petition for bankruptcy. It further held that a homestead exemption is not a separate interest in property but rather is the status of a withdrawn interest in property that was acquired prior to bankruptcy. "Thus a homestead interest established within the statutory period, without more, does not fall within the purview of Section 522(p)(1)." *Wallace*, 513 F.3d at 224.

*Comm'r*, 192 F.3d 844, 848 (9th Cir. 1999) ("[I]f the statute is ambiguous, we consult the legislative history, to the extent that it is of value, to aid in our interpretation.") (internal quotations omitted).

**[9]** That said, we still begin with the statutory language. *See Leocal v. Ashcroft*, 543 U.S. 1, 8 (2004). First, Section 522(p) employs the term "interest" to describe what is acquired by the debtor and can be subject to the monetary limitation. The term "interest" is defined in Black's Law Dictionary as "a legal share in something; all or part of a legal or equitable claim to or right in property." *Black's Law Dictionary* 885 (9th ed. 2009). Various forms of relationships to real property are referred to as property "interests," including possessory interests, leasehold interests, and ownership interests. Such interests are said to "run with the land" — that is, they accompany a conveyance or assignment of land, passing from one purchaser to another through the chain of title. *See Mobil Oil Corp. v. Brennan*, 385 F.2d 951, 953 (5th Cir. 1967).

**[10]** Unlike such property interests, a homestead right, generally speaking, does not "run with the land." Instead, a homestead is a "personal right or privilege given by constitutional or statutory provisions . . . [that] ordinarily is dependent on some title or interest in real property, and it does not exist as a separate estate in property independently of such title or interest." 40 Corpus Juris Secundum, *Homestead* § 3 (2006) (footnote omitted). Nevada law, for example, defines a homestead as "property consisting of" various structures "to be selected by the husband and wife, or either of them, or a single person claiming the homestead," Nev. Rev. Stat. § 115.005, thus presupposing an existing, previously acquired property right and permitting only certain individuals already holding that right to claim a homestead. Thus understood, a homestead is a "categorization" of a status or a classification, not a property interest. *See Wallace*, 513 F.3d at 220, 225; *see also In re Lyons*, 355 B.R. at 390 ("The homestead is not a

quantifiable interest; it is a classification of property under state law.")

**[11]** Second, the different verbs used in Section 522(p) provide support for this understanding. Subsection 522(p)(1), when stating what interest may be exempted, uses the phrase "amount of interest that was *acquired*." (Emphasis added.) However, when referring to the homestead in Section 522(p)(1)(D), the verb used is different: "real or personal property that the debtor or dependent of the debtor *claims* as a homestead." (Emphasis added.) The fact that Congress used two different verbs to describe the process through which these two rights are gained by a debtor suggests a substantive distinction.[7]

Third, the use of the term "amount" to qualify "interest" indicates that the requisite "interest" must be one capable of quantification. *See Wallace*, 513 F.3d at 218-220; *In re Lyons*, 355 B.R. at 390-91. Further, the exception contained in Section 522(p)(2)(B) uses the term "interest" in a manner that supports the idea of a quantifiable interest. The exception states that the monetary cap will not apply to any "interest transferred from a debtor's previous principal residence (which was acquired prior to the beginning of such 1215-day period) into the debtor's current principal residence, if the debtor's previous and current residences are located in the same State." The term "interest" as used in the exception must

---

[7]Cases analyzing the appreciation in value issue with regard to Section 522(p) support our reliance on the terms "interest" and "acquired." *See In re Sainlar*, 344 B.R. 699, 674 (Bankr. M.D. Fla. 2006) ("Both a reading of the plain, unambiguous language of § 522(p)(1) and the statute's legislative history lead to the same result: the monetary cap of § 522(p) is inapplicable to property purchased by a debtor more than 1,215 days before the petition date."); *see also In re Blair*, 334 B.R. 374 (Bankr. N.D. Tex. 2005). Both cases emphasize the use of the terms "interest" and "acquired" in the statute and hold that the phrase " 'interest that was acquired' as used in § 522(p)(1) means the acquisition of ownership of real property." *In re Sainlar*, 344 B.R. at 673.

mean the monetary value or equity taken from the previous principal residence, as the residence itself is not, of course, transferred. We conclude that, as *Lyons* put it, "the homestead is not a quantifiable interest; it is a classification of property under state law." *Id.* at 390.

[12] The final term in Section 522(p)(1) that warrants particular attention is "acquired." Black's Law Dictionary defines "acquire" as "[t]o gain possession or control of; to get or obtain." *Black's Law Dictionary* 26 (9th ed. 2009). As amici point out, acquiring by gaining possession or control of a property interest usually occurs through a properly executed deed or other instrument of conveyance. The term "acquire" would not be used, in common parlance, to refer to classification of the property as a homestead.[8] Support for this interpretation can also be found in the exception contained in Section 522(p)(2)(B), where the verb "acquired" is used in conjunction with the debtor's previous principal residence. In that context, it appears that Congress intended "acquire" to mean "gaining possession or control" by purchasing or gaining an ownership interest, either legal or equitable.

Based on the foregoing analysis of the terms used in Section 522(p)(1) and their juxtapositions, the most plausible interpretation of Section 522(p)(1) is that the act of recording a homestead or moving onto the property to establish residency is not an "amount of interest acquired" for purposes of applying the monetary cap in Section 522(p).

The legislative history fully supports this conclusion. During the debate on S. 256, the bill that became the 2005 BAP-CPA amendments, Senator Thomas Carper of Delaware told his colleagues:

---

[8]Notably, the exception for new residences contained in Section 522(p)(2)(B), also uses the verb "acquired," in conjunction with the debtor's previous principal residence. In that context as well, it appears that Congress intended "acquire" to mean "gaining possession or control" by purchasing or gaining an ownership interest, either legal or equitable.

> [U]nder current law, a wealthy individual in a State such as Florida or Texas can go out, if they are a millionaire, and take those millions of dollars and invest that money in real estate, a huge house, property, and land in the State, file for bankruptcy, and basically protect all of their assets . . . With the legislation we have before us, someone has to figure out that 2 1/2 years ahead of time people are going to want to file for bankruptcy and be smart enough to put the money into a home . . . .

151 Cong. Rec. S. 2415 (Mar. 10, 2005).

Similarly, in the House of Representatives, Rep. F. James Sensenbrenner of Wisconsin placed a "Summary of Principal Provisions" of S. 256 into the record, which stated that "S. 256 closes the [mansion] loophole for abuse by requiring a debtor to reside in the state for at least 2 years before he or she can claim the state's homestead exemption . . . [and] . . . to own the homestead for at least 40 months [1215 days] before he or she can use state exemption law . . . ." 151 Cong. Rec. H. 1993, 2049 (Apr. 14, 2005).

And the House Committee Report indicated that: "The bill . . . restricts the so-called 'mansion loophole' . . . by requiring a debtor to own the homestead for at least 40 months [1215 days] before he or she can use state exemption law; current law imposes no such requirement." H.R. Rep. No. 109-31 (Part I) (2005) ("If the debtor *owns* the homestead for less than 40 months, the provision imposes a $125,000 homestead cap.") (emphasis added).[9] These accounts of the statute all

---

[9]From an equitable perspective, it might seem illogical for Congress to have targeted those people who convert cash or other non-exempt assets into the purchase of a home to shield themselves from creditors, but not be concerned with people such as Greene, who convert their non-residential property into a homestead immediately before filing a bankruptcy petition. We are bound, however, by Congress's decision, whether

emphasize a concern with short-term *ownership* of the homestead property, not a conversion of non-residential into residential property or a new declaration of a homestead through formal processes.

[13] We hold that "any amount of interest that was acquired," as used in Section 522(p)(1), means the acquisition of ownership of real property and that the monetary cap in Section 522(p) does not apply to property to which a debtor acquired title more than 1215 days before she or he filed a bankruptcy petition. That language does not include a homestead claim for the underlying property interest, which claim was recorded within the 1215-day period.[10]

[14] We further hold that, as the facts here are undisputed with regard to when Greene purchased his Property, Greene's homestead is not subject to the $125,000 cap contained in Section 522(p), because he purchased the underlying property interest more than 1215 days before the bankruptcy filing.

[15] In accordance with the foregoing discussion, we will reverse the district court's order affirming the bankruptcy

---

it is thoroughly logical or not. We note that there are other avenues in the Bankruptcy Code for addressing bad faith claims by a debtor. *See, e.g.*, 11 U.S.C. § 727(a)(4)(B) (authorizing denial of discharge for presenting fraudulent claims). Consequently, concerns about such bad faith claims should not impact the interpretation of Section 522(p).

[10]Other courts have also considered the applicability of Section 522(p)(1) when a debtor purchased the property outside the 1215-day window and have held that the date of ownership or acquisition of the property is the date of significance for purposes of determining the applicability of Section 522(p)(1). *See In re Virissimo*, 332 B.R. 201, 207 (Bankr. D. Nev. 2005) ("Because the debtors acquired their homes within the 1215 days before the filing, they are limited to the $125,000 homestead set forth in that § [section 522(p)] notwithstanding that the Nevada homestead is higher."); *In re McNabb*, 326 B.R. at 788 ("Code § 522(p), as added by BAPCPA, applies a $125,000 cap on a homestead if it was acquired by the debtor within 1215 days prepetition . . . .").

court's decision that, where a debtor initiates his residency on the property and records a homestead during the 1215-day period prior to filing his bankruptcy petition, Section 522(p) places a monetary cap on the state law homestead even though the debtor purchased the property before the commencement of the 1215-day period.[11]

## C. Pre-Petition Appreciation of Exempted Property

Greene further argues that the bankruptcy court erred in failing to provide him an evidentiary hearing as to the amount of "pre-petition appreciation" of the Property before granting the trustee authorization to sell the Property. The Property subsequently sold for $370,000, far more than the $240,000 to $260,000 he estimates the property was worth in 2004. His claim, in essence, is that the bankruptcy court did not determine what portion of this appreciation occurred prior to the filing of his petition in 2005. Any pre-petition appreciation, he argues, properly is exempted from the estate.

[16] We agree with the bankruptcy court that, on Greene's own admissions, no such pre-petition appreciation occurred. In his 2005 Chapter 7 petition, the petition at issue in this appeal, he declared, under penalty of perjury, that the value of the Property was $240,000. If the value of the property in 2005 when he filed the petition was $240,000, the subsequent sale of the property for a higher amount necessarily captures only post-petition appreciation. Greene does not argue that any such post-petition appreciation is exempt. Indeed, his claim is that the bankruptcy court failed to conduct a hearing to determine how to divide the appreciation pre- and post-petition, so that the pre-petition appreciation would be exempted.

---

[11]Greene does not argue that the value of the Property increased because he initiated his residence there by moving the trailer and tent onto the land. We do not decide, therefore, whether the monetary cap would apply to the value of improvements to homestead property effected during the 1215 days preceding the petition.

As the bankruptcy court correctly held, no evidentiary hearing is necessary to resolve this question on these facts.[12] If Greene's claim is that his 2005 petition incorrectly declared the value of the Property, the proper course of action would be for him to amend his petition pursuant to Fed. R. Bankr. P. 1009(a), in which "[a] voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed." We note that a court may disallow the amendment only upon "a showing of bad faith or prejudice to third parties," *Arnold v. Gill (In re Arnold)*, 252 B.R. 778, 784 (9th Cir. BAP 2000) (quoting *Magallanes v. Williams (In re Magallanes)*, 96 B.R. 253, 256 (9th Cir. BAP 1988)), but take no position as to whether bad faith or prejudice exists in this case.

**[17]** We therefore hold that, absent any proper amendment to the petition, the bankruptcy estate is entitled to retain all of the appreciation in the value of the Property; that is, any value in excess of $240,000.

## III.

## DISPOSITION

**AFFIRMED, in part; REVERSED, in part; and REMANDED for proceedings consistent with this opinion.**

**Each party shall bear his or her own costs on appeal.**

---

[12]The bankruptcy court also declined to allow Greene to present evidence of pre-petition appreciation, stating that there was no point for Greene to do so because he was only entitled to an exemption of $125,000, the amount of the monetary cap. Specifically, the court said, "it doesn't matter what the value of the property is because it's never going to be more than $125,000 on the date of the filing of the petition. So the value of the property itself doesn't matter . . . ." Given our holding above with respect to the Section 522(p)(1) monetary cap, the value of the Property at the time of the petition *is* material, because Greene's exemption is not limited to $125,000. On the record before the bankruptcy court, however, there was no bona fide dispute as to the value of the Property at the time of the petition, given Greene's signed declaration and his failure to make any effort to file an amended schedule declaring a higher value.