131 Nev., Advance Opinion 25

## IN THE SUPREME COURT OF THE STATE OF NEVADA

NEVADA DEPARTMENT OF
CORRECTIONS; AND NEVADA RISK
MANAGEMENT,
Appellants,
vs.
YORK CLAIMS SERVICES, INC.; AND
WASHWORKS RAINBOW, LLC,
Respondents.

No. 64473

FILED

MAY 07 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order granting judicial review in a workers' compensation matter. First Judicial District Court, Carson City; James E. Wilson, Judge.

*Reversed.*

Adam Paul Laxalt, Attorney General, and Clark G. Leslie, Senior Deputy Attorney General, Carson City,
for Appellant Nevada Department of Corrections.

Beckett, Yott, McCarty & Spann and James A. McCarty, Reno,
for Appellant Nevada Risk Management.

Gordon Silver and Anjali D. Webster, John P. Desmond, and Molly Malone Rezac, Reno,
for Respondents.

BEFORE SAITTA, GIBBONS and PICKERING, JJ.

15-13955

## OPINION

By the Court, GIBBONS, J.:

Appellants Nevada Department of Corrections (NDOC) and State of Nevada Risk Management are contesting the district court's finding that they, and not respondent York Claims Services, Inc., are responsible for Jonathan Piper's workers' compensation coverage stemming from two incidents in which Piper was injured. At the administrative level, the appeals officer found York liable for Piper's workers' compensation coverage for both injuries. Upon judicial review, the district court set aside the appeals officer's decision, finding that NDOC was responsible for Piper's workers' compensation coverage pursuant to NRS 616B.028(1). We conclude that the district court erred in setting aside the decision of the appeals officer because NRS 616B.028(1) does not apply to offenders like Piper, who are participating in the work release program.

## FACTS AND PROCEDURAL HISTORY

In 2010, Jonathan Piper, who was convicted and imprisoned for burglary two years earlier, was transferred to Casa Grande Transitional Housing in Las Vegas, Nevada, to serve out the remainder of his sentence. Casa Grande is similar to a halfway house and is operated by NDOC for offenders participating in NDOC's work release program. Among other various rules and restrictions, an offender at Casa Grande must either have a job or be in the process of searching for a job in the private sector.

Washworks Rainbow, LLC, a full-service car wash in Las Vegas, hired Piper to wipe down vehicles after they were washed. Washworks paid premiums on behalf of Piper to York so that Piper was

 

covered under its workers' compensation insurance coverage, just as Washworks did for all of its employees. After discovering that Piper had a background in gardening, Washworks' owner, Richard Olden, asked Piper to trim some trees on Washworks' property. While trimming the trees, Piper fell off his ladder and struck his head on the ground. Piper, rendered unconscious by the fall, suffered a traumatic brain injury and was taken to the hospital. An emergency craniotomy was performed in order to accommodate brain swelling, essentially saving Piper's life. Over the next four months, Piper underwent various brain surgeries and was transferred between hospitals and rehabilitation centers.

Following Piper's injury, Olden submitted the standard insurance forms he used anytime an employee was injured. York, the workers' compensation insurance provider for Washworks, notified Piper that it denied his claim from his ladder fall. York asserted that Piper was in the legal custody of NDOC while working at Washworks. Thus, York asserted that pursuant to NRS 209.492 and NRS 616B.028, NDOC was financially responsible for Piper's workers' compensation coverage under its own insurance program.

NDOC and co-appellant Risk Management appealed York's denial of coverage to the State of Nevada Department of Administration Hearings Division. The assigned hearing officer found that York's denial of Piper's claim was improper. The hearing officer concluded that York was responsible for coverage because Piper was injured in the course and scope of his employment at Washworks.

Eight days later, while walking around his recovery facility, Piper suffered a major seizure and fell, striking his head. Once again Piper required emergency brain surgery. York notified Piper that it would

not cover any medical charges following the date of his second head injury. York asserted that Piper's second head injury was not work-related nor was it a result of his first head injury because the seizure was a nonindustrial intervening event.

Following York's second coverage denial, Piper, NDOC, Risk Management, and York stipulated to forego the initial hearing on York's second denial of coverage and consolidate both issues—York's challenge of the hearing officer's decision and Piper's challenge of York's second denial—before an appeals officer. The hearing officer granted the stipulation.

Following two days of hearings and written closing statements, the appeals officer was tasked with determining two issues. First, whether the hearing officer's decision finding York responsible for Piper's workers' compensation coverage from his first injury was correct. Second, whether Piper's seizure was an intervening act precluding York from responsibility for workers' compensation coverage for Piper's second injury.

The appeals officer found York liable for workers' compensation coverage for both of Piper's injuries. As to the first issue, the appeals officer found York liable because it found that Piper was an employee of Washworks. Further, the appeals officer found that York's reliance on NRS 616B.028 was without merit. As to the second issue, the appeals officer again agreed with NDOC, finding that the first injury was the substantial contributing cause of Piper's second injury.

York then petitioned for judicial review of the appeals officer's decision. On review, the district court focused entirely on York's NRS 616B.028 argument. The district court posited that the critical question is

"what did the legislature intend when it used the term 'work program' in NRS 616B.028(1)." After a plain-language reading, the district court found that "work program" in NRS 616B.028(1) included the work release program. Thus, the district court concluded that York was not responsible for workers' compensation coverage because NDOC was responsible under NRS 616B.028(1). Accordingly, the district court set aside the appeals officer's decision. NDOC appealed the district court's order.

## DISCUSSION

NDOC argues that the district court misinterpreted NRS 616B.028 because it was not meant to apply to a participant, like Piper, in the work release program. We agree.

*Standard of review*

"On appeal from orders deciding petitions for judicial review, this court reviews the administrative decision in the same manner as the district court." *Nassiri v. Chiropractic Physicians' Bd.*, 130 Nev., Adv. Op. 27, 327 P.3d 487, 489 (2014); *see also Kay v. Nunez*, 122 Nev. 1100, 1105, 146 P.3d 801, 805 (2006) ("[T]his court affords no deference to the district court's ruling in judicial review matters.").

"We review the factual determinations of administrative agencies for clear error 'in view of the reliable, probative and substantial evidence on the whole record' or for an 'abuse of discretion.'" *Nassiri*, 130 Nev., Adv. Op. 27, 327 P.3d at 489 (quoting NRS 233B.135(3)(e), (f)). "Thus, factual findings will only be overturned if they are not supported by substantial evidence, which, we have explained, is evidence that a reasonable mind could accept as adequately supporting the agency's conclusions." *Id.* at 489.

We review questions of law de novo. *City of N. Las Vegas v. Warburton*, 127 Nev., Adv. Op. 62, 262 P.3d 715, 718 (2011); *see* NRS

Supreme Court
OF
Nevada

(O) 1947A

233B.135(3)(a)-(d). "Although statutory construction is generally a question of law reviewed de novo, this court defer[s] to an agency's interpretation of its governing statutes or regulations if the interpretation is within the language of the statute." *Taylor v. State, Dep't of Health & Human Servs.*, 129 Nev., Adv. Op. 99, 314 P.3d 949, 951 (2013) (internal quotations omitted).

*The district court misinterpreted NRS 616B.028*

NRS 616B.028(1) entitles a person to "coverage under the modified program of industrial insurance established by regulations adopted by the Division" if that person is an "offender confined at the state prison, while engaged in work in a prison industry or work program."[1]

NDOC argues that the district court erred when it found that "work program" in NRS 616B.028(1) encompasses the work release program that Piper participated in. In response, York argues that the district court correctly determined that the plain and ordinary meaning of NRS 616B.028 shows that the work release program falls within the ambit

---

[1]NRS 616B.028(1) reads, in pertinent part:

Any offender confined at the state prison, while engaged in work in a prison industry or work program, whether the program is operated by an institution of the Department of Corrections, by contract with a public entity or by a private employer, is entitled to coverage under the modified program of industrial insurance established by regulations adopted by the Division if the Director of the Department of Corrections complies with the provisions of the regulations, and coverage is approved by a private carrier.

of "work program." Each side relies upon a number of statutory construction arguments in support of its position.

"[W]hen the language of a statute is plain and unambiguous, a court should give that language its ordinary meaning and not go beyond it." *Employers Ins. Co. of Nev. v. Chandler*, 117 Nev. 421, 425, 23 P.3d 255, 258 (2001). In conducting a plain language reading, we avoid an "interpretation that renders language meaningless or superfluous." *In re George J.*, 128 Nev., Adv. Op. 32, 279 P.3d 187, 190 (2012) (internal quotations omitted). "If, however, a statute is subject to more than one reasonable interpretation, it is ambiguous, and the plain meaning rule does not apply." *Savage v. Pierson*, 123 Nev. 86, 89, 157 P.3d 697, 699 (2007). "'The plainness or ambiguity of statutory language is determined [not only] by reference to the language itself, [but as well by] the specific context in which that language is used, and the broader context of the statute as a whole.'" *Yates v. United States*, 574 U.S. ___, ___, 135 S. Ct. 1074, 1081-82 (2015) (alterations in original) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). When a statute is ambiguous, we construe it "'consistently with what reason and public policy would indicate the Legislature intended.'" *Star Ins. Co. v. Neighbors*, 122 Nev. 773, 776, 138 P.3d 507, 510 (2006) (quoting *Banegas v. State Indus. Ins. Sys.*, 117 Nev. 222, 225, 19 P.3d 245, 247 (2001)). Furthermore, when a statute is ambiguous we "may look to [its] legislative history to ascertain the Legislature's intent." *Potter v. Potter*, 121 Nev. 613, 616, 119 P.3d 1246, 1248 (2005).

We conclude that "work program" in NRS 616B.028(1) is "subject to more than one reasonable interpretation" and is thus ambiguous. *Savage*, 123 Nev. at 89, 157 P.3d at 699. On the one hand,

"work program" could be broadly construed to include the work release program, as the district court concluded. On the other hand, it could be narrowly construed to refer to a specific type of program under the auspices of the prison industries. A plain reading does not indicate one way over the other. Context is unhelpful because NRS 616B.028 is found in a different chapter than the statutes controlling prison industries and the work release program, NRS Chapters 209 and 213, respectively, and the phrase "work program" does not appear on its own in either chapter. Reading NRS 616B.028(1) broadly, as the district court did, begs the question of why the Legislature would not have simply used the phrase "work release program," considering that the alternative, prison industry, was already provided for. This interpretation renders "release" in "work release program" meaningless. Reading NRS 616B.028(1) narrowly begs the question of why "work program" exists at all in the statute, if "work program" only refers to a program under the purview of the prison industry, when prison industry is already listed. This interpretation renders "work program" superfluous. Due to the ambiguity of what exactly constitutes a "work program," we turn to NRS 616B.028's legislative history.

The original version of NRS 616B.028(1) was codified in 1989. It read, "while engaged in work in a prison industry program," as opposed to today's version, which reads "while engaged in work in a prison industry *or work* program." NRS 616B.028(1) (emphasis added). The "or work" addition was implemented by the Legislature in 1995. The legislative history reveals that "or work" was added to curtail a specific situation in which inmates who were participating in prison work camps with the Division of Forestry were suing the Division of Forestry for

failure to train and inadequate equipment.[2] Hearing on A.B. 587 Before the Senate Commerce and Labor Comm., 68th Leg. (Nev., June 27, 1995).

While NRS 616B.028's legislative history might not precisely state the extent of what "work program" is meant to encompass, it is clear that it does not contemplate the work release program under consideration here. The work release program is codified in NRS Chapter 213. Prison industries and programs concerning forestry are codified in NRS Chapter 209. There is no evidence indicating that the Legislature intended to expand NRS 616B.028(1) in 1995 to include the work release program, which was already enacted at the time, by adding "or work." Therefore, we conclude that "or work," which was added to the statute in

---

[2]In pertinent part the legislative history reads:

> Senator O'Connell discussed the provisions in section 4.5 of A.B. 587. She pointed out the prisoners' medical care is covered in the prison system. Mr. Higgins stated when inmates are in prison work camps they are employees of the Division of Forestry. He stated they are technically employees and the medical care is paid for, but incidences have arisen where the prisoners have sued the Division of Forestry for failure to train, and having inadequate equipment. He stated the Division of Forestry is not covered by exclusive remedy. Senator O'Connell commented it is amazing that a prisoner, who is covered under the prison system, can sue the Division of Forestry for care. Mr. Higgins pointed out this is a legal loophole which attorneys have found and it needs to be filled.

Hearing on A.B. 587 Before the Senate Commerce and Labor Comm., 68th Leg. (Nev., June 27, 1995).

order to resolve issues surrounding inmates working for the Division of Forestry, merely clarifies that NRS 616B.028(1) refers to prison industry programs codified in NRS Chapter 209, whether they take place inside the prison walls, e.g., producing license plates, or outside the prison walls, e.g., outdoor day-labor projects.

Consequently, we reverse the judgment of the district court and reinstate the decision of the appeals officer, which held York liable for Piper's workers' compensation coverage for both injuries.[3]

_____, J.
Gibbons

We concur:

_____, J.
Saitta

_____, J.
Pickering

_____

[3]Additionally, the fact that Washworks paid for Piper to be covered under its workers' compensation coverage provided by York supports this result. *See* NRS 616B.033.