**In re Michael O'NEAL, Debtor(s).**

**No. 02–34504–BKC–SHF.**

United States Bankruptcy Court,
S.D. Florida,
West Palm Beach Division.

Aug. 8, 2007.

Kevin C. Gleason, Esq., Hollywood, FL, for Debtor.

Charles I. Cohen, Esq., Boca Raton, FL, for Trustee.

### ORDER DENYING MOTION TO REVOKE TECHNICAL ABANDONMENT AND MOTION FOR TURNOVER

STEVEN H. FRIEDMAN, Bankruptcy Judge.

THIS CAUSE came on to be heard on July 12, 2007 upon the Motion to Revoke

Technical Abandonment and Motion for Turnover ("Motion to Revoke Abandonment"), filed by Robert C. Furr, chapter 7 trustee ("trustee"). By way of the Motion to Revoke Abandonment, the trustee seeks to vitiate an abandonment by the predecessor chapter 7 bankruptcy trustee of an interest in certain stock owned by the debtor prior to the commencement of this case. After notice to parties in interest, this Court conducted an evidentiary hearing upon the subject motion. Upon careful consideration of the Motion to Revoke Abandonment, together with the evidence presented at the July 12th hearing, the trustee's Motion to Revoke Abandonment is **denied.**

This case was commenced on August 15, 2002 with the filing of a voluntary chapter 7 petition by Michael O'Neal ("debtor"). Pursuant to 11 U.S.C. § 701(a)(1), John P. Barbee ("predecessor trustee") was appointed to serve as interim trustee by the Assistant United States Trustee for the Southern District of Florida (C.P. 3), as evidenced by the Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines, issued by the Clerk of the Bankruptcy Court on August 19, 2002. In accordance with 11 U.S.C. § 341, the predecessor trustee conducted the Meeting of Creditors on September 23, 2002. Following the Meeting of Creditors, the predecessor trustee continued to serve as the chapter 7 trustee, and chose to retain Charles I. Cohen, Esq. to represent him. On October 22, 2002, this Court entered an order approving the retention of Mr. Cohen as the predecessor trustee's counsel (C.P. 16). Based upon the Court's review of the docket for this case, counsel for the predecessor trustee scheduled a Bankrupt-

cy Rule 2004 examination of the debtor for October 28, 2002 (C.P.s 12 and 13). Upon request by predecessor trustee, an extension of time was granted for the filing of an objection to the debtor's claim of exemptions, pursuant to Bankruptcy Rule 4003(b), through November 22, 2002 (C.P. 15). Thereafter, the predecessor trustee filed his Report of No Distribution on December 6, 2002 (C.P. 20), pursuant to Bankruptcy Rule 5009.[1] Contemporaneously, a Discharge of Debtor was issued by the Clerk of Court (C.P. 18), and on January 23, 2003, the Court entered its Final Decree and Discharge of Debtor (C.P. 21).

On September 29, 2006, the predecessor trustee filed his Motion to Reopen Case to Administer Additional Assets and Waive Filing Fee ("Motion to Reopen"-C.P. 22). The Motion to Reopen was filed pursuant to Local Rule 5010-1(C), which provides:

> In a chapter 7 case, a motion to reopen a case to administer additional assets must be accompanied by a proposed order which conforms to the Local Form "Order Reopening Case to Administer Additional Assets".

Such motions are routinely granted, and on September 29, 2006, this Court entered its Order Reopening Case to Administer Additional Assets and Waiving Filing Fee ("Order Reopening Case"-C.P. 24). On October 13, 2006, the Office of the United States Trustee issued its Notice of Appointment of Chapter 7 Trustee (C.P. 26), whereby Robert Furr was appointed the chapter 7 trustee to administer this case, succeeding the predecessor trustee. The trustee thereafter filed an application seeking court approval to employ Charles

1. Pursuant to Bankruptcy Rule 5009, if a chapter 7 trustee has filed a final report and account and has certified that a bankruptcy estate has been fully administered, and if no objection to such final report and final account is filed by the United States trustee or a party in interest within thirty days, "there shall be a presumption that the estate has been fully administered."

I. Cohen as his attorney, and on October 27, 2006, this Court entered its Order Approving Employment of Trustee's Attorney, whereby the trustee's application to employ Charles I. Cohen, Esq. as his attorney was granted (C.P. 28).

In conjunction with the trustee's Motion to Revoke Abandonment, the trustee's attorney scheduled a Bankruptcy Rule 2004 examination of the debtor for February 14, 2007 (C.P. 39). The rationale underlying the trustee's desire to conduct a second Bankruptcy Rule 2004 examination of the debtor appears to have derived from the trustee's discovery that MJO Holding Corp. ("MJO"), an entity wholly-owned by the debtor, and listed on Schedule B–12. of the debtor's bankruptcy schedules as having a value of $1.00 (Trustee's Ex. 1), ostensibly was of significant value, holding a promissory note in the amount of $572,243.00, secured by a mortgage on real property. This Court discerns, both from the language contained in the trustee's Motion to Revoke Abandonment and from the trustee's examinations of the debtor at both the February 14, 2007 Bankruptcy Rule 2004 examination and at the July 12, 2007 hearing, that the underpinning of the trustee's Motion to Revoke Abandonment consists of the trustee's allegations that the debtor intentionally misrepresented the value of the MJO stock in his bankruptcy schedules. Specifically, the trustee points to the following excerpts from the February 14, 2007 Rule 2004 examination of the debtor:

(a) **Page 8, Line 13–Page 9, Line 14:**

Q.: Do you recall filing your bankruptcy initially?

A.: Yes.

Q.: Do you recall that when you filed bankruptcy, you have to file what's called a set of bankruptcy schedules?

A.: Yes.

Q.: And do you understand that you filed those under penalty of perjury?

A.: Yes.

Q.: Do you also understand that you're supposed to list all of your liabilities, as well as all of your assets?

A.: Yes.

Q.: Now, have you reviewed those schedules recently?

A.: No.

Q.: Are you aware that you listed as your corporation the MJO Holding Corporation, that 100 percent ownership was yours?

A.: No, I'm not.

Q.: If I were to tell you that's what's on your bankruptcy schedules, can you explain it to me?

A.: I think when I was filling out the schedules, I think I was instructed to list anything that I own or owned in the past, and list them, itemizing them on the bankruptcy schedules.

(b) **Page 12, Lines 3–9:**

Q.: Did you tell him at any time that you had a note receivable to that company in the approximate amount of $570,000?

A.: I'm not sure.

Q.: Did you ever disclose that to Mr. Barbee at any time?

A.: Again, I'm not sure. It was a long time ago.

(c) **Page 16, Lines 8–10:**

Q.: Did you ever tell Mr. Barbee that MJO Holdings had an interest in real property?

A.: I'm not sure.

Tr.'s Ex. 4–Rule 2004 examination of Michael O'Neal, February 14, 2007. Howev-

er, the Court finds no misrepresentation to have been made by the debtor.

As of the August 15, 2002 commencement of this case, the affairs of Happy Hocker, Inc., the entity which is the subject of the trustee's Motion to Revoke Abandonment, clearly were in a state of disarray. Happy Hocker, Inc. previously was the subject of its own chapter 11 proceeding, Case No. 90–21675–BKC–AJC. Happy Hocker, Inc. filed its chapter 11 petition on March 16, 1990. Thereafter, its Second Amended Plan of Reorganization was confirmed on April 25, 1991 (C.P. 105), and the chapter 11 case was closed on June 23, 1993 (C.P. 155). The instant debtor appears to have owned a proprietary interest in Happy Hocker, Inc., and continued to hold a proprietary interest subsequent to the 1991 confirmation of its chapter 11 plan. Happy Hocker, Inc. also continued to operate under the direction of the debtor, until August 1999, when substantially all of its assets were sold to on Guadalupe Garcia.[2]

On August 19, 1999, MJO Holding Corp. sold its real property to Guadalupe Garcia, and a portion of the purchase price, equal to $466,000, was financed by MJO via a mortgage secured by the real property located at 4525 N.W. 8th Avenue, Oakland Park, Florida (Tr.'s Exs. 8 and 9). The mortgage held by MJO was subordinate to a first mortgage held by the Small Business Administration. The debtor also testified that he had operated the pawn business for 18 years, but that in 2000, his father, while working at a pawn shop, was stabbed to death. Upon the occurrence of this horrific event, the debtor decided to leave the pawn business, and thereafter embarked upon a career in real estate sales. The debtor testified that, prior to

the sale by MJO of its pawn shop and real property to Guadalupe Garcia in August 1999, he had been attempting to sell the pawn shop and real property for a period of 1½ years. He further testified that he had experienced difficulty in securing a purchaser, largely due to environmental issues attendant to the real property. The building and appurtenant real property located at 4525 N.W. 8th Avenue, Oakland Park, Florida, previously had been utilized as a fuel depot, and a purchaser of the property would be required to remove underground fuel tanks in order to comply with environmental regulations. Furthermore, in order to effectuate the purchase from MJO, Mr. Garcia procured a loan from the Small Business Administration ("SBA"), secured by a first mortgage against the subject real property. Mr. Garcia eventually defaulted upon the note and mortgage due to SBA. In addition, Mr. Garcia was three or four months in default upon the MJO second mortgage as of August 15, 2002.

It is the trustee's position that the debtor intentionally mislead the trustee as to the value of the MJO stock interest by testifying that MJO was "just a shell company that I used to do some internet business" (Tr's Ex. 3–pg. 4). The predecessor trustee's inquiry of the debtor at the Section 341 Meeting of Creditors was cursory in nature. Also, pursuant to the debtor's trial testimony, he provided bank statements to the predecessor trustee for MJO encompassing the three-year period prior to the debtor's petition date. The predecessor trustee made no inquiry of the debtor as to MJO's pre-petition bank transactions. Rather, the predecessor trustee apparently concluded, following the debtor's Meeting of Creditors and the

---

2. According to the debtor, the Happy Hocker, Inc. pawn shop was owned by the debtor and his wife Julie O'Neal, as of 1997.

completion of his investigation of the debtor's financial affairs, that MJO possessed no value of consequence, as evidenced by the trustee's filing of his Report of No Distribution on December 6, 2002 (C.P. 20). Indeed, at the March 30, 2007 deposition of the predecessor trustee, Mr. Barbee made reference to the debtor's description of MJO as "just a shell company that I used to do some internet business", and Mr. Barbee added that he "didn't feel like there was any need to investigate it any further" (Tr's Ex. 5–pg. 11, line 25–pg. 12, line 12).

■ This Court's denial of the Motion to Revoke Abandonment is predicated upon its determination that the stock interest, once held by the predecessor trustee as property of this estate, was abandoned. Upon the commencement of a bankruptcy case, a bankruptcy estate is created, consisting of all tangible and intangible property interests of a debtor. *In re Central Arkansas Broadcasting Co., Inc.,* 170 B.R. 143 (Bankr.E.D.Ark.1994); *In re Minton,* 348 B.R. 467 (Bankr. S.D.Ohio 2006). "The scope of [§ 541(a)(1) ] is broad. It includes all kinds of property, including tangible and intangible, causes of action ... and all other forms of property...." *In re Chateaugay Corp.,* 116 B.R. 887, 898–899 (Bankr.S.D.N.Y.1990). Pursuant to 11 U.S.C. § 704(a)(1) it is the trustee's duty to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest." A trustee is vested with authority to sell the property of the estate (11 U.S.C. § 363(b)(1)), and also is authorized to abandon property of the estate (11 U.S.C. § 554). Property which is not sold or otherwise administered during the course of a bankruptcy proceeding is deemed abandoned upon the closing of the bankruptcy proceeding. *In re Balonze,* 336 B.R. 160 (Bankr.D.Conn. 2006).

■ As noted in *Collier on Bankruptcy:*

Courts have disagreed about the effect of reopening the case when property previously has been abandoned by operation of law under section 554(c). A few courts have held that reopening automatically revokes the abandonment, at least if the purpose of the reopening is not limited to other matters. However, this view would eliminate the finality that section 554(c) was intended to provide and also remove the incentive for the trustee to investigate estate assets carefully before closing the case. It would also, upon any reopening for an unrelated cause, such as to enforce the debtor's discharge, expose any abandoned property to a renewed possibility that it could be liquidated by the trustee. The better view is that reopening does not automatically revoke the abandonment and that the court may order that the property not be considered abandoned after a reopening based upon equitable circumstances, such as the trustee having been given misleading information about the property. This view simply reads the language "unless the court orders otherwise" in section 554(c) to include an order entered after the case is closed, but requires some cause for such an order, which deviates from the normal course of events, to be entered. This view was essentially adopted by the Court of Appeals for the Tenth Circuit in *In re Woods,* which held that reopening of a case does not automatically vitiate the abandonment of property under section 554(c) but that a court may, under Federal Rule of Bankruptcy Procedure 9024, vacate the abandonment if the standards of that rule,

the equivalent of Federal Rule of Civil Procedure 60, are met.

5 *Collier on Bankruptcy* ¶ 554.02[7][b]. *See, In re Bast,* 366 B.R. 237 (Bankr. S.D.Fla.2007).

■ Based upon the foregoing, the predecessor trustee abandoned the estate's stock interest in MJO Holding Corp. Furthermore, this Court does not find that circumstances exist to warrant a repudiation of the predecessor trustee's abandonment as to the MJO stock interest. Accordingly, the trustee's Motion to Revoke Technical Abandonment and Motion for Turnover is **denied.**