**In re Margaret Christine COLE, Debtor.**

**Margaret Christine Cole, Movant,**

v.

**Fifth Third Bank, Inc., Respondent.**

**No. 13–73026–MGD.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Signed Nov. 13, 2014.

Filed Nov. 14, 2014.

E.L. Clark, Clark & Washington, P.C., Atlanta, GA, for Debtor.

### ORDER (I) GRANTING DEBTOR'S MOTION TO REVOKE TECHNICAL ABANDONMENT OF PROPERTY OF THE ESTATE AND (II) GRANTING DEBTOR'S MOTION TO DETERMINE SECURED STATUS OF CLAIM

MARY GRACE DIEHL, Bankruptcy Judge.

This case presents an issue of first impression: Can a fully administered, discharged, and closed Chapter 7 case be reopened by the debtor for the sole purpose of stripping off a wholly-unsecured junior lien on real property? For reasons explained below, the Court concludes it can, subject to limitations.

Jurisdiction over this action is set forth in 28 U.S.C. §§ 157(b) and 1334(b). The matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (K) and venue is proper.

### I. PROCEDURAL AND FACTUAL BACKGROUND

Debtor filed a voluntary Chapter 7 case on October 22, 2013. (Doc. 1). On her Schedules, filed the next day, Debtor disclosed an ownership interest in a condominium unit located at 873 Cannon Crossing, Marietta, GA, 30064 which was encumbered by several liens. (Schedule A, Doc. 7 at 9). Debtor's Schedule A showed that the fair market value of the condominium unit was $43,210. (*Id.*). Debtor reported that the unit was subject to a first mortgage lien in the amount of $44,245, a second mortgage lien in the amount of $41,721, and an on-going homeowners' association assessment. (Schedule D, Doc. 7 at 14).

Debtor's meeting of creditors was held on November 20, 2013, and the Chapter 7 Trustee filed a Chapter 7 Trustee's Report of No Distribution on November 26, 2013. Debtor asserts that she intended to file a lien strip motion in the case prior to closure; however, on January 13, 2014, her counsel suggested she obtain an appraisal other than the county's tax appraisal because of the extremely narrow margin of the first mortgagee's undersecured status. (Mot. Revoke Technical Abandonment ("T.A. Motion") ¶ 12, Doc. 38). Debtor apparently did not retrieve this appraisal, and on February 2, 2014, she received her discharge and her case was closed. (Doc.

20). Debtor filed an initial motion to reopen on March 28, 2014, and a successful motion to reopen on April 9, 2014. (Docs. 22, 26). However, no lien strip motion was filed, and the case was closed again on May 21, 2014. Finally, on July 17, 2014, the case was reopened upon further motion, and the next day, Debtor filed a Motion to Determine Secured Status of Claim of Junior Lien Holder Fifth Third Bank, Inc. ("Lien Strip Motion") and set the matter for hearing on August 21, 2014 (Doc. 36).

At the hearing, Richard Thomson appeared for Debtor, and Respondents Fifth Third Bank did not appear to contest the motion. The Court raised questions about whether it could grant Debtor's motion, citing issues of laches, due process, and subject matter jurisdiction. The Court ordered briefing on those issues, and Debtor filed a Brief in Support of her Motion to Determine Secured Status on September 18, 2014 (Doc. 39).

On September 16, 2014, Debtor also filed a Motion to Revoke Technical Abandonment of Estate Property (Doc. 38), and set that for hearing on October 16, 2014. Richard Thomson again appeared for Debtor, and the Court took the matter under advisement at that time as well.

## II. LEGAL ANALYSIS

■ For better or worse, it is settled in this circuit that a debtor may strip off a wholly-unsecured junior mortgage lien in a Chapter 7 bankruptcy using Bankruptcy Code Section 506. *In re McNeal,* 735 F.3d 1263 (11th Cir.2012); *see also In re Malone,* 489 B.R. 275, 285 (Bankr.N.D.Ga. 2013) *aff'd,* 564 Fed.Appx. 991 (11th Cir. 2014). However, two sets of issues arise when reopening a closed and administered bankruptcy case for the sole purpose of stripping a lien. The first set of issues entails equitable considerations and due process, and the second involves subject matter jurisdiction and statutory authority.

### A. Equity and Due Process

■ While the Court in this case has already reopened Debtor's case, equitable considerations such as laches which pertain to motions to reopen are relevant when considering granting relief in a reopened case. For example, "[w]hile the Bankruptcy Code does not provide a time limit for filing a motion to reopen, laches is a valid ground for denial." *In re Chandler,* No. 02–65783–CRM, 2008 WL 7842073, at *3 (Bankr.N.D.Ga. May 23, 2008) (citing *Traub v. Marshall Field & Co.,* 182 F. 622 (5th Cir.1910) and *In re Hunter,* 283 B.R. 353 (Bankr.M.D.Fla. 2002)). As the court in *Chandler* indicated, "time delay alone ... is not sufficient." *Id.* (citing *In re Bianucci,* 4 F.3d 526, 528 (7th Cir.1993)). Rather, time delay is relevant to the extent it bears on "the diligence of the debtor in seeking to reopen the case and any prejudice to the opposing creditor if the case were reopened." *Id.* (citing *In re Paul,* 194 B.R. 381 (Bankr. D.S.C.1995) and *In re Frasier,* 294 B.R. 362 (Bankr.D.Colo.2003)).

■ Due process and fundamental fairness for the respondent are of further concern in contested matters in reopened cases. Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). In a lien strip case, these issues are presented in at least two ways. First, there is a possibility that months after the closing of a case, the security interest or the underlying debt has been transferred from a secured credi-

tor to another party without notice to the transferee that it may be subject to a belated lien strip motion. Second, creditors were not put on notice that valuation as of the time of bankruptcy would be at issue in the future after the case was closed. Absent such notice, they may have failed to gather important evidence at that time that may now be unavailable to them.

## B. Subject Matter Jurisdiction and Statutory Authority

The second set of related inquiries reflects more pragmatic concerns—whether the Court has jurisdiction and statutory authority to grant the requested relief. Code Section 554(c) provides that "[u]nless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor." This is often referred to as abandonment by operation of law, or "technical abandonment." 5 COLLIER ON BANKRUPTCY ¶ 554.02 (16th ed.); *see also Adam I. Adler, Navigating the Morass: A Proposed Uniform Standard to Determine the Revocability of Technical Abandonments*, 27 EMORY BANKR. DEV. J. 523 (2011). As abandoned property is no longer property of the estate, the first issue is whether the Court has subject matter jurisdiction to resolve disputes concerning the property.

The bankruptcy court's jurisdiction is limited to "any or all cases under Title 11 and any or all proceedings arising under Title 11 or arising in or related to a case under Title 11." 28 U.S.C. § 157(a); 28 U.S.C. § 1334(b). Administration of estate property is an example of a matter "arising in" a bankruptcy case. *See In re Toledo*, 170 F.3d 1340, 1345 (11th Cir. 1999). Matters that do not arise in or arise under Title 11 nonetheless may be "related to" the bankruptcy if "the out-

come of the proceeding could conceivably have an effect on the estate being administered in bankruptcy." *In re Lemco Gypsum, Inc.*, 910 F.2d 784, 788 (11th Cir. 1990) (quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984)).

Consequently, once property leaves the estate, a bankruptcy court loses jurisdiction to resolve disputes concerning that property, unless the dispute itself arises under the Code or the result of the dispute could have some effect on the bankruptcy case. *In re Maxwell*, No. 10–79479–CRM, 2012 WL 3678609, at *3 (Bankr.N.D.Ga. Aug. 22, 2012) (citing 4 Collier on Bankruptcy ¶ 554.02[3] (15th ed. rev.2003) and *In re FedPak Sys., Inc.*, 80 F.3d 207, 214 (7th Cir.1996)); *see also Elscint, Inc. v. First Wis. Fin. Corp. (In re Xonics, Inc.)*, 813 F.2d 127, 131 (7th Cir.1987); *In re Bullock*, No. 08–43724–MGD, 2014 WL 3105069, at *4 (Bankr.N.D.Ga. June 16, 2014) (finding jurisdiction for an avoidance action against transferee of an interest in abandoned property).

Even assuming the Court has subject matter jurisdiction over a dispute involving abandoned property which is no longer property of the estate, Section 506(a) poses an additional problem. Section 506(a) determines the secured status of a claim and allows for an undersecured claim to be bifurcated. In relevant part, that section provides that that

[a]n allowed claim of a creditor **secured by a lien on property in which the estate has an interest** ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.

11 U.S.C. § 506(a) (emphasis added). Section 506(d) renders void any lien "[t]o the

extent that a lien secures a claim against a debtor that is not an allowed secured claim." The interplay between these two paragraphs was at issue in *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) as applied to "stripping down" undersecured liens but not, as held by the Eleventh Circuit in *McNeal*, "stripping off" wholly unsecured junior liens. 735 F.3d at 1265–66. In either case, the plain language of Section 506(a) only applies to "property in which the estate has an interest." In fact, the property at issue in *Dewsnup* was actually abandoned by the Chapter 7 trustee, which led the lower courts to uniformly hold that 506(a) was inapplicable to the property. *Dewsnup*, 502 U.S. at 414, 112 S.Ct. 773. The Court never reached the issue. *Id.* at 431, 112 S.Ct. 773 (Scalia, J., dissenting).

All of the foregoing presumes that that upon closing and subsequent reopening of a case, technical abandonment has been irrevocably effectuated. However, Section 554(c) provides that technical abandonment occurs "[u]nless the court orders otherwise," and as Debtor has pointed out, the Court could simply "order otherwise" after the fact, bringing the property back into the estate. The Court next considers this possibility.

### C. Revocation of Technical Abandonment

Several courts have addressed the possibility that an effectuated technical abandonment could subsequently be revoked, normally in the context of a trustee discovering value in abandoned property for the first time after a case is administered and closed. A small minority of courts have held technical abandonment is completely irrevocable. *See e.g.*, *Wallace v. Enriquez (Matter of Enriquez)*, 22 B.R. 934, 935 (Bankr.D.Neb.1982) ("The effect of abandonment by a trustee, whether accomplished by affirmative act under 11 U.S.C.

§ 554(a) or (b) or by failure of administration under sub-paragraph (c), is to divest the trustee of control over the property because once abandoned, property is no longer a part of the bankruptcy estate").

Other courts have held that the reopening of a case under Section 350 automatically revives the original case and negates any technical abandonments. *E.g.*, *Compass Bank for Sav. v. Billingham (In re Graves)*, 212 B.R. 692, 695–96 (1st Cir. BAP 1997); *Figlio v. Am. Mgmt. Servs., Inc. (In re Figlio)*, 193 B.R. 420, 424–25 (Bankr.D.N.J.1996). However, as is noted in COLLIER ON BANKRUPTCY, this view, while perhaps most convenient for the movant, is prone to unintended consequences, chief among them subjecting abandoned assets to liquidation when a debtor reopens a case for reasons unrelated to the abandonment. 5 COLLIER ON BANKRUPTCY ¶ 554.02.

■■ Instead, the Court agrees with the courts that have determined "[t]he better view is that reopening does not automatically revoke the abandonment and that the court may order that the property not be considered abandoned after a reopening based upon equitable circumstances." *In re O'Neal*, 374 B.R. 348, 352 (Bankr.S.D.Fla.2007). Under this view, Section 554(c) allows the court to "order otherwise" after the fact, "but requires some cause for such an order, which deviates from the normal course of events, to be entered." *Id.* Courts following this view generally consider motions to revoke a technical abandonment under the framework of Federal Rule of Bankruptcy Procedure 9024. That rule incorporates Federal Rule of Civil Procedure 60, which allows courts to grant relief from final judgments or orders in equitable circumstances. *E.g.*, *Woods v. Kenan (In re Woods)*, 173 F.3d 770, 778 (10th Cir.1999).

In the leading case on the issue, *In re Woods*, the court "agree[d] with many other courts that ... a bankruptcy court may, in appropriate circumstances, revoke a technical abandonment ... on the basis of Fed. R. Bankr.P. 9024 and Fed.R.Civ.P. 60." *Woods*, 173 F.3d at 778. (citing *In re Schmid*, 54 B.R. 78, 81 (Bankr.D.Or.1985) and *In re Sutton*, 10 B.R. 737, 740–41 (Bankr.E.D.Va.1981)). In that case, the Chapter 11 Trustee sought to revoke the technical abandonment to administer property which was abandoned by Section 554(c) when the case was inadvertently closed. *Id.* at 774. The court in *Woods* found that Fed.R.Civ.P. 60(b)(1) and 60(b)(6) justified revoking the technical abandonment at issue in the case. *Id.* at 781. Courts following *Woods* have held a moving party to a high standard of proof when analyzing whether a provision of Fed.R.Civ.P. 60(b) is met.

For example, the Court in *In re Langley* found that a motion to revoke abandonment must be based on some ground cognizable under Fed.R.Civ.P. 60(b). *In re Langley*, 2011 WL 841170 (Bankr. E.D.Mich.2011). The Court asserted that excusable neglect is not evidenced where the only error was the trustee assuming property had no equity. *Id.*[1] Although the trustee's error in the case may have been "neglect," there was no evidence that the error was excusable or that equity compelled granting of relief. *Id.*

Analyzing revocation of technical abandonment under this lens has the added benefit of setting a bright line one-year limitation on such motions without the necessity of a fact-intensive laches analysis in every case. *See* Adler, *supra*, at 556–57 ("Since the decision to reopen and the decision to revoke are separate inquiries,

and since Rule 9024 does not exclude motions to revoke technical abandonments from the one-year limitation prescribed by Rule 60(c), that limitation should come into play when deciding the merits of the motion to revoke."). Revocation of the technical abandonment resolves the jurisdictional and statutory authority problems posed by the previous section of this Order.

Having concluded that the Court has authority to lift the technical abandonment and the proper standard to apply is found in Rule 9024, the Court turns now to the facts of the instant case.

### III. APPLICATION OF LAW TO THE FACTS

██ The Court holds that on the facts of this case, allowing Debtor to revoke the technical abandonment of her interest in the condominium unit located at 873 Cannon Crossing in order to strip Respondent's lien is appropriate under Rule 9024. Like the trustee in *Woods*, Debtor has shown that the closure of her case prior to seeking the lien strip was due to inadvertence and actions outside of her control. 173 F.3d at 778; (T.A. Motion ¶¶ 12–16, Doc. 38).

The Court also agrees with Debtor that in this case the eight-month delay was not unreasonable under the circumstances and in any case has not worked unfair prejudice on Respondent's rights. In this case, Respondent has been properly served with Debtor's Lien Strip Motion and had equal access to the appraisal methods Debtor has relied upon. Based on those appraisal methods and the assertions contained in the Lien Strip Motion, it appears that Respondent's deed to secure debt is subor-

---

**1.** A court considering a debtor's motion to revoke a technical abandonment might likewise consider whether the only error committed by the debtor was a mistaken assumption that the senior lien was oversecured.

dinate to another deed to secure debt; and that the value of the condominium unit located at 873 Cannon Crossing is less than the amount of debt secured by the first priority deed to secure debt. Respondent did not file a response to the Lien Strip Motion or appear at the hearing to oppose it. Accordingly it is

**ORDERED** that Debtor's Motion to Revoke Technical Abandonment of Estate Property (Doc. 38) is **GRANTED.**

It is **FURTHER ORDERED** that Debtor's Motion to Determine Secured Status of Claim of Junior Lien Holder Fifth Third Bank, Inc. (Doc. 36) is **GRANTED.** It is, therefore **ORDERED** as follows:

1. The junior lien on the condominium unit located at 873 Cannon Crossing (the "Property") held by the Respondent is deemed void with respect to the interest of the Debtor in the Property and shall be extinguished automatically, without further court order; Debtor's discharge having been previously entered.

2. In the event this case is converted to a case under another Chapter of the Bankruptcy Code, the rights of the Respondent with regard to its lien shall be governed by the provisions of the Bankruptcy Code applicable in the converted case such that the lien of the Respondent shall not be affected by this Order.

3. This Order is effective only as to Fifth Third Bank, Inc., and any party who succeeds to the position of Fifth Third Bank after the date of the entry of this Order.

The Clerk is directed to serve a copy of this Order upon Debtor, Counsel for Debtor, and Respondent.