**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

In re:                              )    BAP No.  NC-14-1230-DKiTa
                                    )
GREGORY PAUL BEARDSLEY and          )    Bk.  No.  11-55414-MEH
REBECCA HARO BEARDSLEY,             )
                                    )
                Debtors.            )
_____)
                                    )
RABOBANK, N.A.,                     )
                                    )
                Appellant,          )
                                    )
v.                                  )    **M E M O R A N D U M**[1]
                                    )
GREGORY PAUL BEARDSLEY;             )
REBECCA HARO BEARDSLEY;             )
JOHN W. RICHARDSON, CHAPTER 7       )
TRUSTEE,                            )
                                    )
                Appellees.          )
_____)

Argued and Submitted on May 14, 2015
at San Francisco, California

Filed - August 28, 2015

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Charles D. Novack, Bankruptcy Judge, Presiding

Appearances:    George Cameron Hollister argued for appellant
                Rabobank, N.A.; Charles Patrick Maher of Dentons
                US LLP argued for appellee John W. Richardson,
                Chapter 7 Trustee.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

Before: DUNN, KIRSCHER AND TAYLOR, Bankruptcy Judges.

Memorandum by Judge Dunn

Concurrence by Judge Taylor

Rabobank, N.A. ("Rabobank") appeals the bankruptcy court's order denying its motion under § 506(a) seeking to recharacterize its secured claim as wholly unsecured.[2]  We AFFIRM.

## FACTS

The debtors, Gregory and Rebecca Beardsley, filed their chapter 11 bankruptcy petition on June 7, 2011.  Among their assets, they scheduled a commercial real property located in Pacific Grove, California ("Pacific Grove Property") with a value of $880,000.[3]  The debtors listed a total of $593,108.79 in secured claims encumbering the Pacific Grove Property: 1) Monterey County Tax Collector's $48,174 tax lien; 2) Phillip Giammanco's $344,000 first deed of trust; and 3) Rabobank's $200,934.79 second deed of trust.

On January 30, 2012, Rabobank filed a proof of claim valuing the Pacific Grove Property at $325,000 and asserting a secured claim in the amount of $201,942.81.

The debtors' chapter 11 case was converted to chapter 7 on October 12, 2012.  A month after the conversion, the chapter 7

---

[2] Unless otherwise indicated, all chapter and section references are to the federal Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[3] The Pacific Grove Property consists of four separate but contiguous lots with a kiosk and a storage building located thereon.

2

trustee ("Trustee") employed a broker to market the Pacific Grove Property.

On January 4, 2013, Rabobank filed an amended proof of claim valuing the Pacific Grove Property at $750,000, but leaving the amount of its asserted secured claim unchanged. Shortly thereafter, Rabobank obtained an appraisal of the Pacific Grove Property. The appraisal valued the Pacific Grove Property at $185,000 as of January 16, 2013, based on its "as is" condition. Rabobank also discovered that accrued unpaid real property taxes were approaching $70,000.

Based on this information, Rabobank concluded that its lien "was then and had likely always been wholly unsecured." Consequently, on June 26, 2013, Rabobank filed a second amended proof of claim,[4] this time valuing the Pacific Grove Property at $185,000 and characterizing its entire claim as unsecured.

On January 29, 2014, the Trustee filed a motion to abandon the Pacific Grove Property under § 554(a)("Motion to Abandon"). He explained that, despite his efforts to market the Pacific Grove Property, he had been unable to negotiate a sale that would "benefit the [bankruptcy] estate sufficiently." In fact, the Trustee negotiated a sale but it fell through because he could not meet the buyer's condition: that there would be sufficient water service available to develop the Pacific Grove Property.

---

[4] In its opposition to the debtors' motion to dismiss their chapter 7 case, Rabobank disclosed that it had "amended its claim to concede that its lien position [was] fully unsecured, resulting in an additional unsecured claim of $201,942.81 against the Debtors' Estate."

Because of the water availability issue, the value of the Pacific Grove Property was less than the Trustee had anticipated and significantly less than as scheduled by the debtors. He thus concluded that the Pacific Grove Property was burdensome to the bankruptcy estate and that "further efforts to market [it] and maximize its value [were] not warranted."

On February 19, 2014, Rabobank filed an opposition ("Opposition") to the Motion to Abandon. It contended that the Trustee failed to provide evidence supporting the abandonment of the Pacific Grove Property. Rabobank also argued that formal abandonment of the Pacific Grove Property was unnecessary and premature as abandonment would occur automatically upon closing of the case, which was imminent.

Rabobank moreover averred that it would suffer prejudice if the Pacific Grove Property was abandoned before it obtained a ruling on its motion to determine the status of its claim under § 506(a) ("Status Motion"), **which it planned to file**. Rabobank claimed that a "manifest injustice" would occur if the bankruptcy court denied the Status Motion on the ground that the Trustee had abandoned the Pacific Grove Property. This "manifest injustice" would appear in the form of a "windfall distribution" to the debtors, who could be paid before creditors received full payment on their claims, as the debtors held equity interests.

On February 25, 2014, Rabobank filed the Status Motion seeking a determination that it held a wholly unsecured claim in the amount of $201,942.81, because its collateral, the Pacific Grove Property, had no value beyond the secured claims of the senior lienholders. It referenced the second amended proof of

4

claim, asking the bankruptcy court to determine that its second amended proof of claim was "a wholly unsecured claim." It sought a "finding that [its] Amended Claim #22 in the amount of $201,942.81 [was] an entirely unsecured claim because there [was] no value in the [Pacific Grove] Property beyond the liens of the senior lienholders Monterey County Tax Collector and Phillip Giammanco." Rabobank submitted its appraisal, among other documents, in support of its assertion as to the value of the Pacific Grove Property.

In reply to the Opposition, the Trustee countered that Rabobank itself "made the case for abandonment" in its Status Motion. He pointed out that in the Status Motion, Rabobank sought a determination that its claim was unsecured instead of secured because "its deed of trust attache[d] to no value in the [Pacific Grove] Property." Rabobank even submitted evidence – the appraisal – showing that the Pacific Grove Property had no value in excess of the first two priority liens.

The Trustee filed an opposition to the Status Motion as well. He argued that, assuming the bankruptcy court granted the Motion to Abandon, the Pacific Grove Property would no longer be property of the bankruptcy estate, thereby rendering the Status Motion moot.

The Trustee reported that timely-filed general unsecured claims totaled $140,000 approximately. He estimated that he would have approximately $330,000 on hand to pay these claims after paying allowed administrative expenses. He went on to note that if Rabobank's claim was reclassified as a general unsecured claim, holders of timely-filed general unsecured claims would not

5

be paid in full.[5]

The Trustee further contended that Rabobank was trying to "strip off" its lien through the Status Motion, which was prohibited under Dewsnup v. Timm, 502 U.S. 410 (1992).[6]

The bankruptcy court set a hearing on both the Motion to Abandon and the Status Motion for March 28, 2014 ("Hearing"). A few weeks before the Hearing, on March 3, 2014, the debtors filed an objection to Rabobank's second amended proof of claim ("Claim Objection"), seeking disallowance of the second amended proof of claim in its entirety.

The debtors pointed out that Rabobank held a secured claim against the Pacific Grove Property, which the Trustee intended to abandon. Once the abandonment was confirmed, they argued, Rabobank was required to proceed against the Pacific Grove Property as its sole remedy under state law.

Rabobank filed a response to the Claim Objection, requesting

---

[5] The Trustee also argued that the "one action rule" set forth in California Civil Procedure ("CCP") § 726 precluded Rabobank from seeking to recharacterize its claim unless and until: 1) it obtained a deficiency judgment through judicial foreclosure; 2) Giammanco foreclosed on his first deed of trust, which would extinguish Rabobank's second deed of trust, thereby making it unsecured; or 3) its lien became valueless subsequent to its creation. He argued that Rabobank's proposed "strip off" under § 506 would run contrary to CCP § 726. The debtors echoed these arguments in their own opposition to the Status Motion. On appeal, Rabobank contends that CCP § 726 does not apply because § 506(a), a federal statute, trumps CCP § 726, a state statute. We decline to address this argument as the bankruptcy court did not make any determinations under CCP § 726.

[6] The debtors also opposed the Status Motion, echoing the Trustee's arguments regarding Dewsnup.

6

a hearing.  However, no hearing was set.

At the Hearing, the bankruptcy court addressed the Motion to Abandon first as "dealing with one makes the other far easier." Counsel for Rabobank protested, asking the bankruptcy court to address the Status Motion **before** addressing the Motion to Abandon because "that way, there wouldn't be any inequity because we could just simply have that ruled on."[7]  Tr. of March 28, 2014 hr'g, 5:6-8.  He also informed the bankruptcy court that the debtors had filed the Claim Objection.

The bankruptcy court neither acknowledged Rabobank's request for a determination on the second amended proof of claim nor the filing of the Claim Objection.  Instead, it considered the fairness argument by Rabobank's counsel regarding the order in which it would handle the Motion to Abandon and the Status Motion.  The bankruptcy court stated that § 554(a) does not require abandonment to be fair or equitable for "one particular creditor."  Tr. of March 28, 2014 hr'g, 4:22.  Section 554(a) did not require it to carry out "a balancing of the equities to determine whether or not" to approve abandonment of property. Tr. of March 28, 2014 hr'g, 6:6-7.

---

[7] At the hearing, counsel for Rabobank claimed that the Status Motion was noticed before the Motion to Abandon.  However, we note that the Trustee filed the Motion to Abandon on January 29, 2014.  He also filed and served a Notice of Abandonment on the same day.  Rabobank did not serve the Status Motion until February 24, 2014, and filed the Status Motion on February 25, 2014.

The bankruptcy court dealt with this assertion by telling counsel for Rabobank that "this [wasn't] a first-in-line analysis."  Tr. of March 28, 2014 hr'g, 5:12.

7

The bankruptcy court considered the Trustee's proposed abandonment of the Pacific Grove Property to be typical and straightforward: the abandonment was "for the simple reason that there's no equity in this property [and it] had no value for the bankruptcy estate." Tr. of March 28, 2014 hr'g, 4:7-8. The bankruptcy court pointed out that Rabobank even conceded in its Status Motion that the Pacific Grove Property had no equity and no value for the bankruptcy estate. The bankruptcy court thus granted the Motion to Abandon.

Although it believed that the Motion to Abandon had resolved the issue, the bankruptcy court turned to the Status Motion. It noted that if it granted the Status Motion, Rabobank would receive a dividend as an unsecured creditor yet still have a lien when the bankruptcy case closed.

Counsel for Rabobank asserted that Rabobank was secured under California law – that it had a lien still. However, Rabobank's lien had no value because the Pacific Grove Property had no equity. That is, because the value of its collateral, the Pacific Grove Property, was less than the combined amount of the prior two secured liens, its entire claim was unsecured. Accordingly, Rabobank requested that the bankruptcy court "bifurcate" its claim under §506(a) – to determine that the full amount of its claim was unsecured.

Counsel for Rabobank further argued that if the bankruptcy court granted the Status Motion, Rabobank still would retain its lien, but the amount of its lien would be reduced by the amount of any distribution it received from the bankruptcy estate on its general unsecured claim.

8

The bankruptcy court was not swayed by Rabobank's arguments. It denied the Status Motion on the ground that it had granted the Motion to Abandon. Because the Pacific Grove Property was no longer property of the bankruptcy estate, the bankruptcy court concluded it had "no reason . . . to value [the Pacific Grove Property] under any circumstances." Tr. of March 28, 2014 hr'g, 11:24-25, 12:1.

On April 1, 2014, the bankruptcy court entered an order granting the Motion to Abandon ("Abandonment Order"). On April 14, 2014, it entered an order denying the Status Motion "for the reasons stated on the record" ("Status Motion Order").

Rabobank timely appealed the Status Motion Order. It did not appeal the Abandonment Order.

On December 10, 2014, the Trustee filed an interim final report, conditionally listing Rabobank as a general unsecured creditor in light of its second amended proof of claim. He noted that its "claim [was the] subject of dispute" because Rabobank had appealed the bankruptcy court's decision "to disallow [its] claim in full based on the Trustee's abandonment [of its collateral, the Pacific Grove Property]."

The Trustee indicated that he would reserve the funds that could be paid to Rabobank as a general unsecured creditor until final resolution of the dispute. He also indicated that if the dispute was resolved in its favor, Rabobank would receive a pro rata distribution of $81,792.30 (i.e., 40.5% of its asserted general unsecured claim of $201,942.81).

The Trustee also mentioned that Charles and Debra Beardsley, the brother and sister-in-law of the debtor, Gregory Beardsley,

9

tardily filed a proof of claim in the amount of $180,000 ("Family Claim").[8]  He noted that the Family Claim was deemed allowed, though it would not receive any distribution once all allowed administrative, priority and timely general unsecured claims (including Rabobank's second amended claim) received distributions.  He also indicated that the U.S. Department of Education had filed an untimely proof of claim as well.

On January 12, 2015, an order was entered, stating that the Trustee's interim account was "approved and settled" and that he "shall distribute the estate . . . ."

At oral argument, the Trustee advised us that he intended to file an objection to Rabobank's second amended proof of claim because he considered the Family Claim to be valid.  He explained that if he did not, the Family Claim would not receive any distribution, not only because it was late filed, but also because of the potential distribution on Rabobank's second amended claim.  The Trustee further noted that if Rabobank's second amended claim was not allowed, then all timely allowed general unsecured claims would receive one hundred cents on the dollar.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (K).  We have jurisdiction under 28 U.S.C. § 158.

---

[8] Charles and Debra Beardsley filed their proof of claim on January 21, 2014, nearly one year after the deadline.

10

## ISSUE

Did the bankruptcy court err in refusing to recharacterize Rabobank's secured claim as a wholly unsecured claim under § 506(a)?

## STANDARDS OF REVIEW

We review the bankruptcy court's conclusions of law and interpretation of provisions of the Bankruptcy Code de novo. Anwar v. Johnson, 720 F.3d 1183, 1186 (9th Cir. 2013)(quoting Greene v. Savage (In re Greene), 583 F.3d 614, 618 (9th Cir. 2009)). We review its findings of fact for clear error. Id., quoting Greene, 720 F.3d at 1186.

## DISCUSSION[9]

At the Hearing, Rabobank sought to have its secured second lien claim recharacterized as a general unsecured claim, referring to its second amended proof of claim, so that it could share in a distribution from the bankruptcy estate. On appeal, Rabobank claims that, in its Status Motion, it only wanted a determination under § 506(a) that "the value of the secured portion of [its] claim as of the Petition Date was zero dollars, and therefore that the entire balance of the claim was unsecured." Appellant's Opening Br. at 16. Rabobank argues that the bankruptcy court erred in denying the Status Motion because

---

[9] On July 11, 2014, the debtors filed a notice of joinder ("Joinder") to the Trustee's response brief, simply stating that they joined in the Trustee's response brief. Notably, they have not filed a notice of appearance in the appeal. In its reply brief, Rabobank objected to the Joinder, arguing that the debtors should not be allowed to participate in the appeal because they failed to file the Joinder timely. Neither the debtors nor their counsel appeared to participate at oral argument.

11

the abandonment of the Pacific Grove Property under § 554 did not and should not prevent Rabobank from seeking to recharacterize its claim under § 506(a).[10]

The bankruptcy court expressly based its denial of the Status Motion on its grant of the Motion to Abandon. At the Hearing, the bankruptcy court explained that it was

> granting the Trustee's [Motion to Abandon], and upon granting the motion to abandon, [the Pacific Grove Property was] no longer property of the estate and therefore there's no reason for [it] to value [the Pacific Grove Property] under any circumstances. And given my ruling, the [Status Motion] filed by Rabobank is denied.

Tr. of March 28, 2014 hr'g, 11:22-25, 12:1-2.

Section 506(a)(1) in relevant part provides that, "an allowed claim of a creditor secured by a lien on property **in which the estate has an interest** . . . is a secured claim **to the extent of the value of such creditor's interest in the estate's interest in such property** . . . , and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim." Section 554(a) and (d) provide:

> (a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
> . . .
> (d) Unless the court orders otherwise, property of the

---

[10] Rabobank also argues that the bankruptcy court abused its discretion in denying the Status Motion without considering the evidentiary record. We disagree. The bankruptcy court repeatedly referred to the fact that Rabobank conceded in its own pleadings that the Pacific Grove Property had no equity. Rabobank moreover had included a copy of its appraisal in its submissions.

12

estate that is not abandoned under this section and that is not administered in the case remains property of the estate.

Accordingly, consistent with § 554, when the bankruptcy court granted the Motion to Abandon, the estate no longer had an interest in the Pacific Grove Property, and by its terms, § 506(a) no longer applied.

Rabobank did not appeal the Abandonment Order, and Rabobank contends that the Trustee's abandonment of the Pacific Grove Property did not affect its right to seek bifurcation of its secured claim. We disagree.

Rabobank challenges the bankruptcy court's reliance on the Supreme Court's Dewsnup decision on the ground that Dewsnup dealt with a chapter 7 debtor's attempt to use § 506(d) to strip down an undersecured lien to the value of the collateral. However, in its Status Motion, Rabobank argues that it was seeking to bifurcate or recharacterize its **claim** under § 506(a), not to strip its **lien** under § 506(d). Thus, it contends, Dewsnup does not apply.

At least two bankruptcy courts have noted that, in Dewsnup, the Supreme Court did not address directly the issue of whether a wholly unsecured lien could be stripped when the property to which the lien was attached had been abandoned. See In re Bodensiek, 522 B.R. 737, 738-39 (Bankr. S.D. Fla. 2015); Cole v. Fifth Third Bank (In re Cole), 521 B.R. 410, 414-15 (Bankr. N.D. Ga. 2014). These bankruptcy courts noted that, in Dewsnup v. Timm, 908 F.2d 588 (10th Cir. 1990), the Tenth Circuit had held that § 506(a) applies where the collateral is property in which the estate has an interest. Because the bankruptcy

13

estate retains no interest in abandoned property, the Tenth Circuit reasoned, § 506(a) bifurcation does not apply. The Tenth Circuit then concluded that if § 506(a) does not apply, the chapter 7 debtor cannot strip down a lien under § 506(d). However, the bankruptcy courts recognized that the Supreme Court decided Dewsnup on a different ground. See Bodensiek, 522 B.R. at 739; Cole, 521 B.R. at 415.

We agree with these bankruptcy courts that the Supreme Court in Dewsnup did not address § 506(a) head on.

> Were we writing on a clean slate, we might be inclined to agree with petitioner that the words "allowed secured claim" must take the same meaning in § 506(d) as in § 506(a). But, given the ambiguity in the text, we are not convinced that Congress intended to depart from the pre-Code rule that liens pass through bankruptcy unaffected.

Dewsnup, 502 U.S. at 417.

Moreover, we note that the Supreme Court issued a decision recently, Bank of America, N.A. v. Caulkett, 135 S. Ct. 1995 (2015), that revisits its decision in Dewsnup. In Caulkett, the Supreme Court repeated the holding in Dewsnup: a debtor cannot

> strip down the creditors' lien to the value of the property under § 506(d) "because the [creditors'] claim [wa]s secured by a lien and ha[d] been fully allowed pursuant to § 502." . . . In other words, Dewsnup defined the term "secured claim" in § 506(d) to mean a claim supported by a security interest in property, regardless of whether the value of that property would be sufficient to cover the claim. Under this definition, § 506(d)'s function is reduced to "voiding a lien whenever a claim secured by the lien itself has not been allowed." . . . Because the Bank's claims here are both secured by liens **and allowed under § 502**, they cannot be voided under the definition given to the term "allowed secured claim" by Dewsnup.

Caulkett, 135 S. Ct. at 1999, quoting Dewsnup, 502 U.S. at 416, 417. As we read Caulkett, the Supreme Court still has not

14

addressed directly the application of § 506(a) where the characterization or allowance of a claim as secured or unsecured, rather than lien avoidance under § 506(d), is at issue.

Rabobank still urges us to consider Dewsnup – at least, Justice Scalia's dissent, which **does** analyze the interplay between § 506(a) and (d). Although we acknowledge that dissents can be persuasive, they are not precedential. See U.S. v. Ameline, 409 F.3d 1073, 1083 n.5 (citing Purcell v. BankAtlantic Fin. Corp., 85 F.3d 1508, 1513 (11th Cir. 1996)). Also, more importantly, Rabobank did not raise this argument before the bankruptcy court. We thus decline to consider it. See In re Healthcentral.com, 504 F.3d 775, 789 (9th Cir. 2007) (citation omitted).

Contrary to Rabobank's contention, we determine that the Trustee's abandonment of the Pacific Grove Property **does** affect its ability to seek a determination of the secured or unsecured status of its claim under § 506(a). As noted above, § 506(a)(1) provides for determination of a creditor's claim as secured and/or unsecured with respect to property **in which the estate has an interest**.

"'Where the statute's language is plain, the sole function of the courts is to enforce it according to its terms, for courts must presume that a legislature says in a statute what it means and means in a statute what it says there.'" Meruelo Maddux Props-760 S. Hill Street, LLC v. Bank of America, N.A. (In re Meruelo Maddux Props., Inc.), 667 F.3d 1072, 1076 (9th Cir. 2012)(quoting Int'l Ass'n of Machinists & Aerospace Workers v. BF Goodrich Aerospace Aerostructures Grp., 387 F.3d 1046, 1051

15

(9th Cir. 2004)). Again, by its terms, § 506(a) requires the creditor to have a lien on property **in which the estate has an interest** in order to obtain a decision as to the secured and/or unsecured status of its claim.

However, when property has been formally abandoned under § 554(a), the bankruptcy estate no longer has an interest in it.

> Within the context of bankruptcy, abandonment is the formal relinquishment of the property at issue from the bankruptcy estate. Upon abandonment, the debtor's interest in the property is restored **nunc pro tunc** as of the filing of the bankruptcy petition.

Catalano v. Comm'r, 279 F.3d 682, 687 (9th Cir. 2002)(italics in original). See also Slates v. Reger (In re Slates), 2012 WL 5359489 at *10 (9th Cir. BAP 2012); Achi v. Casey (In re Achi), 2001 WL 36354910 at *1 (9th Cir. BAP 2008). Here, the Trustee abandoned the Pacific Grove Property, as confirmed by the bankruptcy court in the Abandonment Order. Once abandoned, the bankruptcy estate no longer had an interest in the Pacific Grove Property. Because the bankruptcy estate did not have an interest in the Pacific Grove Property, Rabobank could no longer obtain a determination that its claim was unsecured with respect to the Pacific Grove Property under § 506(a). The bankruptcy court thus did not err in denying Rabobank's Status Motion consistent with the provisions of the Bankruptcy Code.

We recognize that the bankruptcy court's ruling imposes a potentially unfair result in the real world. But we cannot conclude that the bankruptcy court erred in denying the Status Motion when the Pacific Grove Property was abandoned by the Trustee, which eliminated the estate's interest in the property. And Rabobank did not appeal the Abandonment Order.

16

We further note that, in light of the Trustee's interim final report, the debtors will not benefit from the bankruptcy court's ruling. Although Rabobank will not receive a distribution from the estate if its second amended claim is disallowed, the debtors will not receive any surplus distribution, as the Trustee will be using any remaining funds to pay the Family Claim and the tardy proof of claim filed by the Department of Education pro rata.

**CONCLUSION**

For the reasons set forth above, we AFFIRM.

CONCURRENCE BEGINS ON NEXT PAGE.

17

TAYLOR, Bankruptcy Judge, Concurring:

I concur in the result reached by the Panel because I agree with the technical determination that § 506(a) applies only to property in which the estate has an interest and that it cannot be used to bifurcate Rabobank's claim after abandonment of the Pacific Grove Property. I write separately to discuss in more detail the interaction between § 506(a) and CCP § 726(a).

The bankruptcy court was concerned that Dewsnup v. Timm, 502 U.S. 410 (1992), barred the result Rabobank sought. I do not share this concern; neither Dewsnup nor the more recently decided Bank of America, N.A. v. Caulkett, 135 S. Ct. 1995 (2015), are controlling case authority here or even particularly relevant. These cases make clear that a chapter 7 debtor cannot use § 506(d) as a basis for a lien strip where the creditor's "claim is secured by a lien and [is an allowed claim] pursuant to § 502." Dewsnup, 502 U.S. at 417. The distinctions here, however, are that Rabobank requested the § 506(a) valuation and that California law, not § 506(d) or any other federal statute, bankruptcy or otherwise, would have formed the basis for a lien strip.

As stated in the Memorandum at footnote 6, the bankruptcy court did not make any determination under CCP § 726; I suggest that it should have. CCP § 726(a) states that there can be only "one form of action for the recovery of any debt . . . secured by a [deed of trust] upon real property." California law defines an "action" as: "[a]n ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right [or] the redress or

1

prevention of a wrong . . . ." Cal. Code Civ. P. § 22. CCP § 726(a), thus, forces a California real property secured lender to seek recovery of a deficiency claim through one judicial action and only after obtaining recovery from its real property collateral in the judicial action. <u>Metro. Life Ins. Co. v. Sunnymead Shopping Ctr. Co. (In re Sunnymead Shopping Ctr. Co.)</u>, 178 B.R. 809, 815 (9th Cir. BAP 1995). Almost always, the trustor can require that the judicial action take the form of a judicial foreclosure. <u>See</u> <u>All. Mortg. Co. v. Rothwell</u>, 10 Cal. 4th 1226, 1236 (1995).

I suggest that Rabobank's recovery on its claim from non-collateral estate assets pursuant to an order on its § 506(a) motion would have constituted an action as contemplated by CCP § 726(a); and loss of lien would have followed under California law. <u>See</u> <u>Shin v. Super. Ct.</u>, 26 Cal. App. 4th 542, 545-46 (1994) (creditor waived collateral where it obtained a prejudgment attachment against non-collateral located in Korea from a Korean court); <u>Sec. Pac. Nat'l Bank v. Wozab</u>, 51 Cal. 3d 991 (1990) (creditor waived collateral after it exercised its banker's right of offset and recovered on non-collateral); <u>see also</u> <u>Disalvo v. Disalvo (In re Disalvo)</u>, 221 B.R. 769, 774-75 (9th Cir. BAP 1998).

Given my view that <u>Dewsnup</u> is inapposite, I cannot determine whether the bankruptcy court's refusal to conduct a § 506(a) valuation prior to abandonment constituted error. No one disputes that this valuation would result in a determination that Rabobank was entirely unsecured or, to place this determination in the context of a California judicial foreclosure, that

2

Rabobank was entitled to a deficiency judgment equal to 100% of its claim. I acknowledge, however, that a bankruptcy court applying California law either must or generally should refrain from such a valuation determination and, instead, require a judicial foreclosure.

And I also acknowledge that the Trustee was in a difficult position; he was subject to criticism if he did not exercise his probable right under California law, as successor to the debtors, to the affirmative defense that Rabobank could recover against non-collateral only through a judicial foreclosure. Indeed, the Trustee was as even-handed as he could be.

In a narrow circumstance, California law does not allow a trustor to require that the § 726(a) action be a judicial foreclosure; in particular, where real property collateral had value at the time of trust deed recordation, but becomes valueless through no fault of the secured lender, a direct action for collection of the deficiency is permitted without the useless act of foreclosure. See 4 Miller & Starr, California Real Estate, § 10:197 (3d ed. 2013) (citing Cohen v. Marshall, 197 Cal. 117, 123 (1925)). Here, the Trustee acknowledged the possibility that Rabobank could establish that judicial foreclosure was unnecessary.

The record is undeveloped in this respect, but I agree that it is possible, if not probable, that this case is subject to this exception; certainly, no one provided evidence definitively to the contrary. If a judicial foreclosure is not required prior to establishment of a deficiency under California law, then I see no reason why the right to a deficiency could not be accomplished

3

through a § 506(a) valuation and the bankruptcy claims process, with the lien strip resulting as a matter of California law.

I finally acknowledge, however, that Rabobank did not help its cause. It made statements suggesting that it intended its lien to ride through the bankruptcy notwithstanding recovery from estate assets and failed to clearly acknowledge the implications of California law. It also failed to appreciate the very limited range of options available to the bankruptcy court. This was not helpful.

At oral argument, the Trustee conceded that the outcome of the bankruptcy court's ruling in this case was "harsh" and "unfair" and to this end stated that "it wouldn't break my heart if I lost [on appeal]." Oral Argument (May 14, 2015). Here, Rabobank will recover zero from the estate where other unsecured creditors filing timely claims get paid 100% and the late filed claim of an insider is also paid meaningfully. Rabobank, further, will be barred from any deficiency claim against debtors as a result of the bankruptcy discharge; it merely retains a worthless lien.

The bankruptcy court stated that "[t]here is no such requirement in § 554(a) for it to be fair to any one particular creditor." Hr'g Tr. (Mar. 28, 2014) at 4:20-22. This is true as far as it goes, but a decision can be so clearly unfair that this broad statement must fail. This might be true where a fundamental principle of bankruptcy law, the requirement that similarly situated creditors be treated similarly, is violated. It certainly could be the case where a creditor entitled to a lesser level of priority receives preferment.

4

Balanced against this inequity are at least three considerations. First, the Trustee's objection was based, in part, on his desire to close the case promptly. Second, Rabobank retains another option — stay relief, judicial foreclosure, and a request that the estate remain open. And, third, although there is no dispute that the Pacific Grove Property is now valueless as to Rabobank, it is unclear whether this was a result of a post-trust deed recordation loss of value; if not, then only judicial foreclosure is an option. The bankruptcy court did not consider these factors as a basis for its decision to immediately abandon; but as to the first point I note that as a result of this appeal, the estate remains open. Were I at liberty to do so, I would consider a remand for additional findings regarding the bankruptcy court's decision to hear the abandonment motion first.